MAYFIELD-DORSH, INC., ET AL., APPELLEES, *v.*
CITY OF SOUTH EUCLID ET AL., APPELLANTS.

(No. 80-1718—Decided December 16, 1981.)

*Messrs. Arter & Hadden, Mr. Richard E. Kleinman* and
*Mr. Michael C. Zellers,* for appellees.

*Mr. Earl T. Longley,* director of law, and *Mr. Peter P.
Lograsso,* for appellants.

*Per Curiam.* It is a fundamental principle of Ohio zoning law that appellees, the parties challenging the validity of a zoning classification, have, at all stages of this litigation, the burden of demonstrating the unconstitutionality or unreasonableness of the zoning code. *Leslie* v. *Toledo* (1981), 66 Ohio St. 2d 488, 489; *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93, 95; *Hilton* v. *Toledo* (1980), 62 Ohio St. 2d 394, 396. See, generally, *Willott* v. *Beachwood* (1964), 175 Ohio St. 557. Zoning ordinances which are enacted pursuant to a municipality's police powers are presumed valid until the contrary is clearly shown by the party attacking the ordinance. *Brown* v. *Cleveland, supra,* at 95. See, generally, *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23; *Village of Euclid* v. *Ambler Realty Co.* (1926), 272 U. S. 365.

Moreover, a successful declaratory judgment challenge must demonstrate, beyond fair debate, that the zoning classification is unconstitutional, unreasonable and not substantially related to the public health, safety, morals or general welfare. *Mobil Oil Corp.* v. *Rocky River, supra; Willott* v. *Beachwood, supra.*

For the reasons that follow, we find that appellees have overcome the presumptive validity of the challenged zoning classification and have clearly demonstrated, beyond fair debate, the unreasonableness of the classification as applied to the subject tract.

The impasse between the parties in the case at bar centers around the extent to which the 3.45 acre tract, which was last rezoned in 1954, should be developed. On the one hand, appellants contend that eight one or two family homes should be built on the property. On the other hand, appellees submit that 45 multiple family condominium structures are the most cost effective and reasonable development plans for the land.

Appellants' plan would entail constructing eight separate driveways from each individual lot onto Mayfield Road. Mayfield Road, Ohio State Route 322, is a major east-west, five-lane thoroughfare accommodating a heavy traffic flow of approximately 27,000 cars per day. Appellees' plan, by contrast, would create only one or two driveways intersecting with Mayfield Road.

The mayor and the traffic commissioner of the city of

South Euclid, the trial court and a unanimous Court of Appeals all concluded, in essence, that eight driveways merging into Mayfield Road's five lanes of traffic was, vis-a-vis one or two driveways, congestive, hazardous and a serious safety problem. We agree with this assessment.

The planning commission also failed to recognize that appellees' project would be harmonious with existing zoning and the use of nearby property. The property forming the western boundary of the subject tract is the South Euclid Branch of the Cuyahoga County Library, which was zoned Residence-Office District at the commencement of the case *sub judice*.[1] West of the library is another Residence-Office District area which harbors a florist, a funeral home and a medical center. Directly north of this area is a parcel zoned Multiple-Family District. The mayor, during his trial testimony, recognized that the area surrounding this 3.45 acre tract has not maintained an essentially residential character.[2]

It is our judgment, therefore, that, in light of the foregoing zoning classifications and uses of the surrounding properties, the Residence - 60 classification of the subject tract is arbitrary and unreasonable.

---

[1] We note, parenthetically, that, subsequent to the commencement of this action, the city of South Euclid rezoned the library property Residence - 60. However, in arriving at our decision today, we attach no significance to this change in zoning classification in view of the fact that: (1) this library property is still being used as a library; (2) it is uncontroverted from the record that the present institutional use is intended to be maintained long into the future; and (3) the library is on the historical register of the United States Government.

[2] Relevant portions of the mayor's testimony read as follows:

"Q. Now, you stated that it is not reasonable.

"A. It might be unreasonable to have this single-family usage, right, or single-facility lots on Mayfield Road, *considering the change and character of Mayfield Road over the years.* * * *[Emphasis added.]

"* * *

"Q. * * *The single-family, you have already said you didn't think was a good idea, right?

"A. No. I don't think it was probable, economical or feasible for a developer of a single-family home.

"Q. You don't think it would sell besides?

"A. Probably not.

"Q. And the cost of the building would be too high, *plus the character of the neighborhood, this is no longer a single-family area,* is it, Mayfield and Dorsh?

"A. Probably not." (Emphasis added.)

The planning commission further failed to discern that the unique topography of appellees' land requires, from a practical and economical perspective, a special configuration of structures. More precisely, due to a flood plain on and a steep incline · in the property, any structures would have to be clustered in the center of the property, much like appellees have proposed, in order to avoid extensive and prohibitively expensive grading. Contrary to any of appellants' proposals, eight one or two family homes could not be spread across the land, regardless of the rise or fall of the topography. Indeed, one of appellants' alternative proposals envisioned homes built directly on the flood plain. How a developer could secure insurance or financing for such a venture was not, of course, proffered.

For all the aforementioned reasons, we find, after a careful review of the entire record, that appellees have clearly demonstrated, beyond fair debate, that the Residence - 60 classification of the subject property is unconstitutional, unreasonable, arbitrary and not substantially related to the public health, safety and general welfare. To reinstate the Residence - 60 classification of appellees' property would be unsound, uneconomical, unsafe and unimaginative, particularly in light of appellants' counsel's stipulation in open court during oral argument to this court that the city of South Euclid is ready and willing to negotiate with appellees on a development plan for homes in excess of eight one or two family structures.

We have repeatedly ruled that zoning is, in the first instance, committed to the judgment and discretion of the legislative body. See, *e.g., Willott* v. *Beachwood, supra.* And, we have frequently observed that we have no desire to sit as a super board of zoning appeals. See, *e.g., Peachtree Development Co.* v. *Paul* (1981), 67 Ohio St. 2d 345, 354. However, cases where one party unambiguously demonstrates, with a massive amount of evidence, the invalidity of a zoning classification mandate meaningful judicial review. This is one of those cases. We affirm, therefore, that part of the Court of Appeals' judgment which upheld the trial court's granting of appellees' declaratory judgment request.

However, zoning is, essentially, a legislative matter.

*Union Oil Co.* v. *Worthington* (1980), 62 Ohio St. 2d 263; *Mobil Oil Corp.* v. *Rocky River, supra,* at page 31 (Corrigan, J., concurring); *Willott* v. *Beachwood, supra,* paragraph three of the syllabus.

As we recently held in *Union Oil Co.* v. *Worthington, supra,* at 267: "Thus, in a declaratory judgment action, upon finding existing zoning unconstitutional as applied to specific real property, the trial court should give notice to the zoning authority that, within a reasonable time certain, it may, at its option, rezone the property. Further notice should be given that, if the property is not rezoned within such period of time, the court will authorize the property owner to proceed with the proposed use if, on the basis of the evidence before it, the court determines the proposed use to be reasonable. The court may enjoin the property owner from seeking a building permit, establishing a nonconforming use or otherwise changing the *status quo* during the interim. If necessary, the court may conduct further proceedings, including the hearing of additional evidence, to determine whether the new zoning restrictions may constitutionally proscribe the owner's proposed use.

"In the event the zoning authority either fails to rezone or fails to rezone the property in a constitutionally permissible manner, the court shall examine the reasonableness of the proposed use, and, upon finding that use to be reasonable, enjoin the city from interfering with it."

The appellate court did not follow the *Union Oil* guidelines in the case at bar. Accordingly, we reverse that part of the Court of Appeals' judgment which upheld the trial court's rezoning of the subject property and remand the cause to the Court of Appeals for further proceedings not inconsistent with this opinion.

Accordingly, for all the foregoing reasons, the judgment of the Court of Appeals is affirmed in part and reversed in part and the cause is remanded.

*Judgment accordingly.*

CELEBREZZE, C. J., W. BROWN, SWEENEY and KRUPANSKY, JJ., concur.

LOCHER, HOLMES and C. BROWN, JJ., concur in part and dissent in part.

LOCHER, J., dissenting in part. I agree with the majority that the trial court, based upon *Union Oil Co.* v. *Worthington* (1980), 62 Ohio St. 2d 263, erred by ordering rezoning of the property. Otherwise, I dissent.

The majority articulates a three-pronged test, which the party challenging a zoning ordinance in a declaratory judgment action must meet, that is, the zoning classification must be beyond fair debate: (1) unconstitutional, (2) unreasonable, *and* (3) not substantially related to public health, safety, morals or general welfare.

In this cause, the majority appears to consider the number of driveways and their influence on traffic control to be a critical concern under the third category. Yet, this court has observed that "traffic regulation must remain a byproduct of zoning activities * * *." *State, ex rel. Killeen Realty Co.,* v. *East Cleveland* (1959), 169 Ohio St. 375, 386. I am not convinced, therefore, that appellees have clearly shown that the zoning ordinance is not substantially related to public health, safety, morals or general welfare. *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93.

Appellees' case for unconstitutionality is even weaker. Indeed, the majority merely recites a series of facts and concludes that the ordinance is unconstitutional without stating the basis for unconstitutionality. A due-process "taking" of property without just compensation is the most likely rationale. Yet, the facts belie this conclusion. The city zoned this area R-60 (single and two-family residential) as part of a comprehensive zoning plan in 1954. Neither Mayfield-Dorsh, Inc., nor Hon, Inc., the optionee, has demonstrated that its interest in this property arose prior to the effective date of this zoning plan. There can be no judicial finding of an unconstitutional "taking" under these circumstances.

Rather, the crux of this case is that appellees assert, and the majority agrees, a change in zoning is necessary in order to gain a higher economic return from this property. The majority refers to economic considerations no less than twice before coming to its conclusion that the ordinance is unreasonable. This court's business judgment now supersedes the community's decision regarding the quality of life which the local planning commission articulated under its constitutionally

guaranteed "home rule" powers. See Section 3 of Article XVIII of the Ohio Constitution. This is a bitter irony in light of the contemporary trend toward returning governmental decision-making authority to the local level whenever possible. Unfortunately, the long-standing respect which the judiciary has had for the ability of local boards and commissions to employ zoning fairly appears to be on the wane. *Village of Euclid* v. *Ambler Realty Co.* (1926), 272 U. S. 365.

This property is almost exclusively contiguous to single and two-family residential areas. The only *reasonable* conclusion is that it likewise remain zoned for single and two-family residential housing.

Accordingly, I would reverse the judgment of the Court of Appeals *in toto,* because appellees have not clearly demonstrated that the city's zoning ordinance is unconstitutional, unreasonable *and* not substantially related to the public health, safety, morals or general welfare.

HOLMES, J., concurs in the foregoing concurring and dissenting opinion.

CLIFFORD F. BROWN, J., concurring in part and dissenting in part. I concur in this court's determination "after a careful review of the entire record, that appellees have clearly demonstrated, beyond fair debate, that the Residence-60 classification of the subject property is unconstitutional, unreasonable, arbitrary and not substantially related to the public health, safety and general welfare." That such zoning is unlawful as applied to appellees' tract could not be expressed more clearly.

I also concur in this court's affirmance of that part of the Court of Appeals' judgment which upheld the trial court's grant of declaratory judgment relief for appellees.

I conclude, however, that the trial court correctly ordered the city of South Euclid to issue building permits for construction of the condominium project planned on plaintiffs' 3.45 acre tract and that the Court of Appeals correctly affirmed such judgment. This court by stating that the Court of Appeals did not follow the *Union Oil* guidelines and in remanding this case to that court for further proceedings does not agree with my assessment.

Therefore, I respectfully dissent from the majority deci-

sion to remand this case to the Court of Appeals for further proceedings. This decision was made in the light of *Union Oil Co.* v. *Worthington* (1980), 62 Ohio St. 2d 263. Under the procedure announced in that case, the lower court must now "give notice to the zoning authority that, within a reasonable time certain, it may, at its option, rezone the property," and "that, if the property is not rezoned within such period of time, the court will authorize the property owner to proceed with the proposed use if, on the basis of the evidence before it, the court determines the proposed use to be reasonable." *Union Oil, supra,* at 267.

I can see no good reason to delay plaintiffs any further in their efforts to construct the proposed housing development on their property. This weird remedy, announced in *Union Oil,* will throw the zoning ball back into the arena of the zoning authority whose prior decision has been declared unlawful at all three judicial levels. This will give the zoning authority of the city of South Euclid the opportunity to continue its strategy of obstruction and delaying tactics so amply demonstrated in the many months preceding the initiation of this declaratory judgment action. By remanding this case to the lower courts, and of necessity to the zoning board, we are, in effect, encouraging the city of South Euclid to continue its efforts to stall, thwart, and hopefully kill the lawful condominium project of plaintiffs.

The procedure announced in *Union Oil* is a judicial aberration, defying principles of speedy justice and common sense. That *per curiam* opinion should be limited to its facts. Better yet it should be completely disavowed and overruled. The apparent rationale of that decision was that where judicial rezoning occurs, "uses may be authorized for which no evidence of reasonableness was presented." *Union Oil, supra,* at 266. Here, the record demonstrates that the proposed condominium project "beyond fair debate" is the only lawful use that can be made of this tract.

The trial court, in granting plaintiffs declaratory judgment relief, restored the R-O zoning classification applicable to the adjacent property immediately west of plaintiffs' property. Therefore, plaintiffs' zoning request was for an extension of the R-O zoning to include plaintiffs' tract. This was the judicial

relief granted. This permitted construction of plaintiffs' condominium project. The Court of Appeals affirmed this decision. It was incorrect and unnecessary for the courts to order the property rezoned to Residence-Office District. They needed only to decree that the Residence-60 classification can not apply to plaintiffs' property because it is unconstitutional as applied to the particular parcels in controversy. The judicial decision, far from appropriating a legislative function, would be limited to authorization of the condominium proposal as presented, leaving the existing Residence-60 zoning classification for neighboring parcels unchanged.

It is my opinion that the convoluted procedure outlined in *Union Oil* will encourage endless litigation in the lower courts and prestidigitation and obfuscation by the zoning authorities of the city of South Euclid. This remand procedure is tantamount to the creation of judicial ping-pong between the courts and the zoning authorities. Remand has neither finality nor decisiveness. It is an exercise in judicial futility. I would order the city of South Euclid to issue the building permits necessary to construct the project as outlined, without changing the existing zoning of the tract. Such a result is consistent both with our past decisions, as in *Driscoll* v. *Austintown Associates* (1975), 42 Ohio St. 2d 263,[3] and with the principles of judicial economy. Justice delayed is justice denied.

---

[3] In *Driscoll* v. *Austintown Associates, supra,* in a declaratory judgment action, this court, in reversing the Court of Appeals, affirmed the judgment of the trial court authorizing a landowner to use his property in a manner contrary to the uses permitted by the zoning ordinance in a specified zoning district, without any remand to the zoning authority for a rezoning of the subject property. Remand to the zoning authority for rezoning is a superfluous action. *Gates Mills Investment Co.* v. *Pepper Pike* (1975), 44 Ohio St. 2d 73; *Central Motors Corp.* v. *Pepper Pike* (1979), 63 Ohio App. 2d 34; *cf. Flair Corp.* v. *Brecksville* (1976), 49 Ohio App. 2d 77, 85, and *Shopping Centers of Greater Cincinnati* v. *Cincinnati* (1959), 109 Ohio App. 189, 191. See, generally, 10 Ohio Jurisprudence 3d 516-517, Buildings, Zoning and Land Controls, Section 301.