640

TOWN CENTER DEVELOPMENT CO., APPELLANT, *v.*
CITY OF CLEVELAND ET AL., APPELLEES.

[Cite as Town Center Development Co. v. Cleveland (1982),
69 Ohio St. 2d 640.]

(No. 81-318—Decided March 9, 1982.)

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Herbert R. Brown* and *Mr. Raymond D. Anderson,* for appellant.

*Mr. Thomas E. Wagner,* director of law, and *Mr. Robert McCarthy,* for appellees.

*Per Curiam.* The interior parcel is zoned B-Two Family. This is controlled by Section 337.03 of the Codified Ordinances of the City of Cleveland, which provides:

"In a Two-Family District the following buildings and uses are permitted:

"(a) Dwelling houses, each occupied by not more than two families and not more than two roomers or boarders.

"(b) All other uses permitted and as regulated in a One-Family District.

"(c) The Board of Zoning Appeals, after public notice and public hearing, and upon prescribing proper safeguards to preserve the character of the neighborhood, may grant special permits for the remodelling of existing dwelling houses or the erection of row houses to provide for more than two dwelling units but not more than six dwelling units in each building, provided that:

"(1) The square feet of lot area to be allotted to each dwelling unit is in accordance with the area regulations included in Chapter 355.

"(2) The dwelling units to be created will be not smaller than two rooms and a bathroom.

"(3) There will be no exterior evidence that a remodelled dwelling house is occupied by more than two families, except such as may be permitted by the Board.

"(4) The building when altered or erected and when occupied will conform to all the applicable provisions of the Building and Housing Codes and as the Commissioner of Building and the Commissioner of Housing so certify.

"(5) Garage space or hard surfaced and drained parking space will be provided upon the premises for the cars of the families to be accommodated on the premises at the rate of not less than one car per family."

The appellant's development was to fall within the ambit of Section 337.03(c). Even assuming that all of the requirements of that subsection, as set forth above, were met, the development would not have been possible unless the appellant was able to obtain access because the interior parcel is landlocked.[1]

The only possible access was through the smaller parcel which fronted West 166th Street. The appellant's plan was to build a 24-foot wide private drive across the 40-foot wide lot. The lot is located in an A-One Family district. Section 337.02 of the Cleveland codified ordinances sets the parameters of permissible uses in A-One Family districts. The proposed private drive is not among the permitted uses. Consequently, a variance was necessary for the project to be built.

The variance power is invested in the board of zoning appeals by Section 329.03 of the Cleveland codified ordinances. This section reads, in pertinent part:

"(a) *Conditions Requiring Variances.* Where there is practical difficulty or unnecessary hardship in the way of carrying out the strict letter of the provisions of this Zoning Code, the Board of Zoning Appeals shall have the power, in a specific case, to vary or modify the application of any such provisions in harmony with the general purpose and intent of this Zoning Code so that public health, safety, morals and general welfare may be safe-guarded and substantial justice done."

The standard of review for a court in an appeal brought under R. C. 2506.01 *et seq.* is set forth in R. C. 2506.04. That section provides in pertinent part:

"The court may find that the order, adjudication or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record."

In *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202, 207, this court reviewed this language and stated:

" * * * If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must

---

[1] The appellant's principals previously owned the land which fronted upon Rocky River Drive, directly to the west of the interior parcel, but they sold it without reserving an easement for access to the interior parcel.

affirm the agency decision; if it does not exist, the court may reverse, vacate, modify or remand.''

A review of the record reveals that the construction of appellant's planned private road would lead to increased traffic on West 166th Street. Also, the road would terminate within the complex at a circle. There was testimony that the turning radius for the circle, 40 feet, would create a safety hazard because certain fire engines had a like turning radius. This would have created a hazard for any such fire engine when it had to leave the complex in an emergency. Lastly, the road would be in close proximity to houses which adjoined the small lot.

Based upon these factors, we conclude that a preponderance of reliable, probative and substantial evidence supports the board's decision not to grant the variance since it did not meet the standards set forth in Section 329.03 of the Cleveland codified ordinances. As the grant of the special permit for the interior parcel was predicated upon obtaining a variance for ingress and egress, the board was likewise correct in its decision not to grant the special permit.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

W. BROWN, LOCHER, HOLMES and STEPHENSON, JJ., concur.

CELEBREZZE, C. J., SWEENEY and C. BROWN, JJ., dissent.

STEPHENSON, J., of the Fourth Appellate District, sitting for KRUPANSKY, J.

WILLIAM B. BROWN, J., concurring. Since appellant's interior parcel is landlocked, the threshold inquiry is whether a variance should have been granted for the lot located on West 166th Street. Granting of the variance is a prerequisite for consideration of the special permit for the interior parcel.

The West 166th Street lot is 40 feet wide. Single-family homes lie on either side of the lot. The area is zoned for single-family use. Appellant requested a variance to permit the construction of a private roadway as a permitted use of that lot.

The roadway would be 24 feet wide, leaving eight feet between the edge of the road and each of the adjoining lots. Appellant's witness William Jackman testified that at least 270 vehicle trips per day would be made using the private roadway. Given this factual foundation, I concur with the majority that the denial of the variance is supported by a preponderance of reliable, probative and substantial evidence.

First, the variance request failed to meet the condition for a variance contained in Section 329.03(b)[2] of the Cleveland codified ordinance that the landowner show "practical difficulty or unnecessary hardship" in restricting use of the parcel to single-family use. Clearly, the dimensions of the lot allowed for such use. Nor did appellant demonstrate that denial of the variance would deprive it of substantial property rights, since single-family use of the parcel was still possible, or that the granting of the variance would not be contrary to the purpose and intent of the zoning code. The conversion of a single-family lot into a private roadway bearing 270 vehicle trips per day is a radical alteration of the character of the neighborhood and not in concert with the area classification.

Moving from the question of whether appellant offered sufficient evidence to comply with the municipal ordinance, we turn next to the question of the ordinance itself: whether the ordinance, insofar as it prohibits a specific use, is unconstitutional. The inquiry becomes whether the ordinance "in proscribing a landowner's proposed use of his land, has any reasonable relationship to the legitimate exercise of police power by the municipality." *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23. The record here supports a conclusion that the variance denial, and the application of a single-family use

[2] "(b) *Limitation of Variance Powers.* Such variance shall be limited to specific cases where:

"(1) The practical difficulty or unnecessary hardship inheres in and is peculiar to the premises sought to be built upon or used because of physical size, shape or other characteristics of the premises or adjoining premises which differentiate it from other premises in the same district and create a difficulty or hardship caused by a strict application of the provisions of this Zoning Code not generally shared by other land or buildings in the same district;

"(2) Refusal of the variance appealed for will deprive the owner of substantial property rights; and

"(3) Granting of the variance appealed for will not be contrary to the purpose and intent of the provisions of this Zoning Code."

classification to the subject parcel, bears a substantial relationship to the public health and safety.

Testimony was presented that automobiles would be passing within sixteen feet of the bedroom windows of the adjacent landowners. Traffic would be increased significantly on West 166th Street, which itself is only 26 feet wide. Clearly, the increased noise to the adjacent landowners, the enlarged safety hazard to area children and the alteration of the character of the residential neighborhood surrounding the lot all support the reasonable relationship of the ordinance to the public health and safety.

Appellant complains that denial of the variance effectively landlocks the interior parcel. It should be emphasized that such a situation is of appellant's own making. Appellant's principals previously owned land directly to the west of the interior parcel, which fronted on Rocky River Drive. That land was sold without reserving an easement. That resulted in a self-created hardship from which appellant has no reason to expect relief by the conversion of a single-family lot into a roadway.

Given the disposition of the variance request, the special permit should also be denied, since it was predicated upon obtaining access to the interior parcel.

CELEBREZZE, C. J., dissenting. I must respectfully dissent from today's decision because the majority opinion, emulating the Court of Appeals, has discerned a fire safety hazard which I am unable to find in my copy of the record.

While *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202—the sole case cited in the majority opinion—is relevant to the extent that it construes the standard of judicial review in a R. C. Chapter 2506 appeal, it is not, of course, a zoning case. Rather, *Dudukovich* deals with the legality of the discharge of an inspector by the Lorain Metropolitan Housing Authority. Conspicuous by their absence from the majority opinion are any references to the plethora of zoning cases recently decided by this court. I submit that there is nothing in the prior zoning decisions of this court which even suggests—much less compels—the result reached by the majority today.

The Court of Appeals' reliance on *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23, can only be described as baf-

fling. In *Mobil Oil,* this court upheld a city council's refusal to rezone property in order to permit the operation of a gasoline service station in an area zoned single-family residential. Under the applicable zoning ordinances in *Mobil,* a gasoline service station was *not* a permitted use in a single-family residential classification and was not contemplated in the ordinances. In the case at bar, however, pursuant to Section 337.03(c) of Cleveland's Codified Ordinances, rowhouses may be constructed in a two-family district upon the granting of a special permit by the board of zoning appeals. Thus, the proposed construction here, unlike in *Mobil,* was specifically provided for in the ordinances.

In order to understand the focal point of the case at bar, it is first necessary to point out what the case *does not* concern. It is not a case where the character or residential integrity of the neighborhood is threatened, as in *Mobil Oil Corp.* v. *Rocky River, supra.* Nor is it a case where the Court of Appeals directly identified traffic congestion as the problem. See, generally, *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93; *State, ex rel. Associated Land & Investment Corp.* v. *Lyndhurst* (1958), 168 Ohio St. 289; Annotation, 74 A.L.R. 2d 418. Nor is it a case in which one party contends that the aesthetics of an area will be harmed. See, generally, *Mayfield-Dorsh, Inc.,* v. *South Euclid* (1981), 68 Ohio St. 2d 156.

Instead, the Court of Appeals, in a demonstration of judicial clairvoyance, invalidated the entire project because "the plan would pose a fire hazard, therefore clearly constituting a detriment to public safety." Evidently, the Court of Appeals felt that (1) the parking lot in the proposed complex would be overcrowded and (2) the turning radius in the parking lot was inadequate for fire apparatus, thus impeding the ingress and egress of emergency vehicles and constituting a fire hazard.

The fundamental flaw in the majority's and the Court of Appeals' reasoning, however, is that this conclusion is entirely based on a speculative assumption. More specifically, Cleveland's current zoning code requires one parking space per unit for a rowhouse use. Thus, under the code, this development would require 50 parking spaces. However, the proposed development indicates 74 parking spaces—approximately 50

percent *in excess* of the code requirement. Nevertheless, the board of zoning appeals apparently decided that 74 spaces were inadequate due to testimony in the record that most homeowners have two cars.

In my estimation the testimony concerning the number of cars owned by most *homeowners* is totally irrelevant to the determination of the number of cars which *renters* of two-bedroom rowhouses might own. While I acknowledge the need for a court, on occasion, to take judicial notice of undisputed facts (see Evid. R. 201; Morgan, Judicial Notice, 57 Harv. L. Rev. 269), an appellate court should not be engaging in crystal-ball analysis vis-a-vis the automotive habits of rowhouse renters. There is nothing in this record, considered as a whole, which demonstrates to me that the parking facilities in the proposed development—which already meet the code requirements—will be inadequate or a fire hazard.

Similarly, my reading of the record uncovers no turning radius problem. As Mr. Jackman, a traffic engineer expert, testified:

"Q. You described the turn around. Have you compared the radius of the turn around to any existing standards in the City of Cleveland?

"A. This is in excess of the normal radius. Generally 30 feet is looked upon as adequate, and this has a 40-foot radius."

A case like this compels me to make one final observation on the scope of judicial review of zoning determinations. While a zoning classification may be entrusted, in the *first* instance (*Willott* v. *Beachwood* [1964], 175 Ohio St. 557) to the legislative judgment, review of zoning decisions, in the *final* analysis, is a judicial function. It is our responsibility to examine zoning decisions critically, giving due, but not undue, deference to the conclusions of a board of zoning appeals or a city council. However, a reviewing court should never become a rubber stamp for a legislative determination.

Whether this court is reviewing, pursuant to R. C. Chapter 2721, a declaratory judgment challenge to the constitutionality of a zoning classification, or, as here, evaluating, pursuant to R. C. Chapter 2506, a zoning classification as applied to a proposed development, the critical considerations, practically speaking, are whether, *inter alia,* the decision of the

legislative or administrative body is arbitrary, unreasonable, reasonably related to the public health or safety, or supported by a preponderance of the reliable evidence. *Mayfield-Dorsh, Inc.,* v. *South Euclid, supra; Cincinnati Bell* v. *Glandale* (1975), 42 Ohio St. 2d 368; *Mobil Oil Corp.* v. *Rocky River, supra.*

Applying these criteria to the facts at bar, the case, in its present posture, with all its speculative, groundless assumptions, presents evidence which, in my judgment, strongly preponderates *against* the conclusion that the proposed development constitutes a fire hazard. As such, this is precisely the type of case where meaningful judicial review mandates reversing the Court of Appeals and the board of zoning appeals. See, also, *Mayfield-Dorsh, Inc.,* v. *South Euclid, supra.*

For all the foregoing reasons, therefore, I respectfully dissent and urge reinstatement of the trial court's judgment.

SWEENEY and C. BROWN, JJ., concur in the foregoing dissenting opinion.

CLIFFORD F. BROWN, J., dissenting. The Court of Common Pleas properly reversed the Board of Zoning Appeals' denial of a special use permit for the erection of rowhouses on an interior parcel of land and the construction of a 24-foot wide private drive on West 166th Street. The Court of Common Pleas found the decision of the board "unconstitutional, illegal, arbitrary, capricious, unreasonable and unsupported by the preponderance of substantial, reliable and probative evidence on the whole record."

The Court of Appeals reversed the judgment of the Court of Common Pleas on the asserted ground that "the Board did not abuse its discretion in denying appellee's requests for special permits for the erection of rowhouses" because "the Board's decision was supported by the preponderance of substantial, reliable and probative evidence on the whole record. R. C. 2506.04"; and that "[t]herefore, the reversal of the decision by the Common Pleas Court constituted error."

The language of the Court of Appeals opinion reveals that the Common Pleas Court rendered its decision within the proper standard of review prescribed for common pleas courts. However, the Court of Appeals exceeded its lawful

standard of review as set forth in R. C. 2506.04. That section of the Administrative Procedure Act provides:

"The court may find that the order, adjudication or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence *on the whole record.* Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication or decision, or remand the cause to the officer or body appealed from with instructions to enter an order consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party *on questions of law* pursuant to Section 2505.01 to 2505.45, inclusive, of the Revised Code." (Emphasis added.)

The language of R. C. 2506.04 permits the Court of Common Pleas to weigh the evidence "on the whole record," while limiting the Court of Appeals to a review of the Common Pleas Court decision solely "on questions of law." The Court of Appeals is precluded from weighing the evidence and substituting its judgment for that of the Common Pleas Court. These two differing standards for review for the Common Pleas Court and the Court of Appeals were fully explained in *Dudukovich* v. *Lorain Metropolitan Housing Authority* (1979), 58 Ohio St. 2d 202, 207 as follows:

"[I]t is quite evident that the Court of Common Pleas must weigh the evidence in the record, and whatever additional evidence may be admitted pursuant to R. C. 2506.03, to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision. * * * " See, also, *Mentor Lagoons* v. *Board of Zoning Appeals* (1958), 168 Ohio St. 113, 118.

In *Dudukovich,* at pages 207-208, we further explain the limited scope of review of the Court of Appeals, as follows:

"In determining whether the standard of review prescribed by R. C. 2506.04 was correctly applied by the Court of Common Pleas, both *this court and the Court of Appeals have a limited function.* R. C. 2506.04 provides, in part: 'The judgment of the court [of Common Pleas] may be appealed by any party on questions of law pursuant to sections 2505.01 to 2505.45, inclusive of the Revised Code.'

"Referring to R. C. 2505.31, we find that '[i]n a civil case

or proceeding * * * , the supreme court need not determine as to the weight of the evidence.' *Thus, our inquiry is limited to a determination of whether, as a matter of law, we can say that there did exist a preponderance of reliable, probative and substantial evidence to support * * * [the challenged board action].*" (Emphasis added.)

Under the *Dudukovich* standard if this court finds, as a matter of law, that the preponderance of reliable, probative and substantial evidence supports the decision of the Court of Common Pleas, this court must reverse the Court of Appeals. Because the Court of Common Pleas decision was supported by a preponderance of such evidence, the judgment of the Court of Appeals must be reversed.

Furthermore, the Cleveland zoning code authorizes rowhouse construction upon the grant of a special permit by the board in its sound discretion, provided that the proposed development meets the specifications prescribed in the Codified Ordinances of the city of Cleveland.[3] The evidence submitted to the board of zoning appeals conclusively shows that the project proposed by Town Center complies with and exceeds in every respect these requirements for the protection of the public.

A careful review of the entire record compels the conclusion that the Board did *not* act in its sound discretion, that it disregarded "the preponderance of substantial, reliable, and probative evidence" and, therefore, the board's action was without reasonable justification. Consequently, it was the duty of the Court of Common Pleas to reverse the board without hindrance from the Court of Appeals or this court.

The Court of Appeals decision violates another elementary principle in an R. C. Chapter 2506 appeal challenging the con-

---

[3] The requirements for a special permit to construct rowhouses are contained in Sections 337.03, 355.04, 355.06 and 357.10. They can be summarized as follows:

(1) A minimum total lot area of 20,000 square feet;
(2) A minimum lot area per dwelling unit of 2,400 square feet;
(3) A minimum unit floor plan of two rooms and one bath;
(4) One parking space per dwelling unit;
(5) A maximum floor area to land area ration of not more than 50%;
(6) A minimum private yard per dwelling unit of 800 square feet;
(7) A minimum rear yard of 22½ feet;
(8) A minimum interior side yard of 11 feet.

stitutionality of a zoning ordinance as applied. The issue for determination is whether the ordinance, in proscribing a landowner's proposed use of his land, has any reasonable relationship to the legitimate exercise of police power by the municipality. *Cincinnati Bell* v. *Glendale* (1975), 42 Ohio St. 2d 368; *C. Miller Chevrolet* v. *Willoughby Hills* (1974), 38 Ohio St. 2d 298; *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23.

The reasons presented to the board for denying the special permit, namely, increased traffic, safety and fire hazards, are the usual sham and shibboleth urged by neighboring owners whenever an applicant seeks a zoning change through a special permit or zoning use variance[4] for any kind of building construction. If such slogans were always accepted by a board or a court we would never develop underused areas, such as plaintiff's West 166th Street parcel. Instead we will crystallize into wasteland the vacant spaces in our urban areas. God did not intend any owner's land to serve as a Buena Vista for the neighboring owners or for the public generally. Neither should the law of Ohio as established by this court intend such a ridiculous purpose, which serves only the vested interests of the specially privileged.

Because the Court of Appeals decision should be reversed, I dissent.

---

[4] A zoning variance, rather than a special use permit, was also appropriate in this case, the former under the variance powers prescribed in Section 329.03 of the Codified Ordinances of the City of Cleveland and the latter under Section 337.03.