Franchise Operations, Inc., d.b.a.
Burger King Restaurant,
Appellee, *v.* City of North
Olmsted et al., Appellants.

(No. 51925—Decided
May 26, 1987.)

*Richard F. Patton,* for appellee.

*Michael R. Gareau,* director of law, and *James M. Dubelko,* for appellants.

Jackson, J. This matter is presented on the appeal of the city of North Olmsted and E. J. Gundy (hereinafter "appellants") from the trial court's judgment that North Olmsted Ordinance No. 83-78 restricting hours of operation for late-night, drive-thru restaurants near residential property was unconstitutional as applied. These are the facts.

Plaintiff-appellee, Franchise Operations, Inc., d.b.a. Burger King Restaurant (hereinafter "Burger King"), filed a complaint on April 24, 1985 against defendants city of North Olmsted, E. J. Gundy (North Olmsted Building Commissioner) and Anthony J. Celebrezze, Jr. (Ohio Attorney General) alleging North Olmsted Ordinance No. 83-78 enacted as an emergency measure was unconstitutional on its face and as applied. Burger King sought declaratory and injunctive relief. The court granted Burger King a temporary restraining order on April 24, 1985.

Upon consent of the parties, Burger King's request for preliminary and permanent injunctions was merged with the May 6, 1985 trial on the merits.

Burger King has owned and operated a Burger King Restaurant on the corner of Lorain and Canterbury Roads in North Olmsted, Ohio since the late 1960s. Lorain Road is zoned commercial while Canterbury Road is zoned residential.

In 1976, Burger King was granted permission from North Olmsted to begin drive-thru window service at its Lorain Road location. Beginning in August 1981, Burger King instituted full, late-night service from the hours of 11:00 p.m. to 3:00 a.m. at its Lorain Road location.

On October 4, 1982, North Olmsted City Council enacted Ordinance No. 82-123 prohibiting drive-thru window sales after 11:00 p.m. Sunday through Thursday and after midnight Friday and Saturday where the restaurant was located within two-hundred-fifty linear feet of any residence. Since this ordinance was silent as to morning hour drive-thru sales, North Olmsted City Council, on June 21, 1983, repealed Ordinance No.

82-123 and enacted Ordinance No. 83-78. The latter ordinance provides in pertinent part:

"SECTION 1: That this Council does hereby regulate the use of drive-thru restaurant facilities by adopting the following provisions:

"(a) No person being the owner, operator, tenant, employee or agent of any restaurant shall sell or offer for sale any of its products through a drive-thru facility before 6:00 am and after 11:00 pm Sunday through Thursday, and not before 6:00 am and after 12:00 midnight on Friday and Saturday, if said restaurant is located within 250 (two hundred fifty) linear feet of any residential structure.

"(b) Any person violating the provisions of this regulation shall be guilty of a minor misdemeanor, the fine of which shall not exceed $100.00 (one hundred dollars).

"SECTION 2: That Ordinance No. 82-123 is hereby repealed.

"SECTION 3: That this Ordinance is hereby declared to be an emergency measure, necessary for the immediate preservation of the public health, safety and welfare of the City of North Olmsted, and for the further reason that it is immediately necessary to restrict noise levels to protect residential areas from the regulated activity, and further provided it receives the affirmative vote of two-thirds of all members elected to Council, it shall take effect and be in force immediately upon its passage and approval of the mayor."

Burger King's property does not comply with the two-hundred-fifty-linear-foot setback requirement of Ordinance No. 83-78 for late-night, drive-thru sales. To comply, Burger King would either have to forego its profitable drive-thru business, institute more costly in-house service during these hours or acquire four to five adjacent residential properties.

Sometime after Ordinance 83-78's passage, David Stein filed a written complaint with the North Olmsted police alleging excessive noise from Burger King's late-night drive-thru. A summons in lieu of warrant was issued to Joseph Britton, Burger King's Director of Operations. The summons was subsequently dismissed pending these proceedings.

At trial, Burger King called Britton, James Walters (the North Olmsted outlet manager), Josseppi and Josephine Sapone (an employee and his mother who live behind this Burger King) and Gundy.

Though conflicts exist, three separate witnesses testified to complaints involving excessive noise from Burger King's late-night, drive-thru speakers. Josseppi Sapone testified about what he characterized as "crank" calls on the outside speaker box and a complaint from the North Olmsted police. Britton caused Walters to lower the speaker volume.

Burger King on average serves two hundred customers nightly. Approximately ten to twenty seconds are spent taking and thirty to fifty seconds are spent filling each order. The clientele during late-night hours tend to be more boisterous. Both Britton and Walters stated that it was less hazardous, quieter and more cost effective to operate a drive-thru window where excessive noises were muffled by a running engine, than to operate in-house service.

From the testimony, the trial court found Burger King sustained its burden of proving Ordinance No. 83-78 unconstitutional as applied and permanently enjoined enforcement of the ordinance against Burger King.

Therefrom, appellants timely appealed raising five assignments of error.

Assignments of error one, two and

four, being interrelated, are jointly discussed. They are:

"I. The trial court erred in holding North Olmsted Ordinance No. 83-78 unconstitutional, as the ordinance's sole purpose is to regulate noise in the interest of health and welfare of the North Olmsted community."

"II. The trial court erred by failing to allow North Olmsted Ordinance No. 83-78 a strong presumption of validity and constitutionality."

"IV. The trial court erred in holding North Olmsted Ordinance No. 83-78 bore no relationship to its designed purpose, *viz.*, the protection of the health, safety and welfare of the North Olmsted residents."

Appellants' jointly contend the trial court did not grant the required presumption of validity to Ordinance No. 83-78, enacted pursuant to the municipal police power, prior to declaring it unconstitutional as applied.

A legislative enactment is presumptively constitutional. *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375, 377, 15 O.O. 3d 450, 451, 402 N.E. 2d 519, 521. *Mayfield-Dorsh, Inc.* v. *South Euclid* (1981), 68 Ohio St. 2d 156, 22 O.O. 3d 388, 429 N.E. 2d 159. A challenger must prove "beyond fair debate" that the ordinance falls beyond a valid exercise of a municipal police power — specifically, that it is unreasonable, arbitrary or confiscatory and not substantially related to the public health, safety, morals or general welfare. *Euclid* v. *Ambler Realty Co.* (1926), 272 U.S. 365; *Central Motors Corp.* v. *Pepper Pike* (1979), 63 Ohio App. 2d 34, 13 O.O. 3d 347, 409 N.E. 2d 258. This burden requires demonstration of a clear and palpable police power abuse before judicial interference substituting its own judgment for legislative discretion is warranted. *Downing* v. *Cook* (1982), 69 Ohio St. 2d 149, 151, 23 O.O. 3d 186, 187, 431 N.E. 2d 995, 997. The degree of proof required must be greater than a mere preponderance, but need not be proof beyond a reasonable doubt or by clear and convincing evidence to take the issue of reasonableness beyond the reach of fair debate. *Central Motors Corp.* v. *Pepper Pike, supra.* Where the validity of legislation is "fairly debatable," the legislative determination is permitted to control. *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93, 98, 20 O.O. 3d 88, 91, 420 N.E. 2d 103, 107. Local governments are presumed to be familiar with constituency conditions and needs and can best formulate conforming legislation. *Allion* v. *Toledo* (1919), 99 Ohio St. 416, 124 N.E. 237.

An ordinance is "fairly debatable," when "reasonable minds may differ. A mere difference of opinion is not sufficient to make the issue of validity * * * fairly debatable because it is relatively easy * * * to obtain the services of expert witnesses who will have differing opinions as to the validity of a zoning ordinance. The fairly debatable rule must concern itself not with mere words or expressions of opinion, but basic physical facts pertinent to the issue of the validity of the zoning ordinance.

"Where it appears from all the facts that room exists for a difference of opinion concerning the reasonableness of a zoning classification, the legislative judgment is conclusive. Within reasonably debatable areas of judgment and policies, courts will not attempt to decide what ought to be done or not done by local zoning authorities. Only where illegality is clearly demonstrated or where the ordinance is arbitrary, unreasonable or discriminatory is judicial interference warranted." (Emphasis deleted.) *Central Motors Corp.* v. *Pepper Pike, supra,* at 51, 13 O.O. 3d at 358, 409 N.E. 2d at 272.

Upon review, the record does not

substantiate the trial court's finding that North Olmsted Ordinance No. 83-78 containing a two-hundred-fifty-linear-foot setback requirement for late-night, drive-thru operations constitutes a clear and palpable abuse of its municipal police power unrelated to its enumerated purpose, that being the regulation of noise in residential areas. R.C. 715.49 states in pertinent part:

"Any municipal corporation may prevent * * * noise * * *, preserve the peace and good order, and protect the property of * * * its inhabitants."

It is uncontroverted Ordinance No. 83-78 was enacted as a twofold emergency measure (1) to preserve the public health and welfare of residential neighborhoods in close proximity to commercial districts, and (2) to lawfully regulate disruptive noises created by such late-evening commercial activity in these areas.

Under no interpretation can it be said Burger King vitiated the presumption of legislative validity by taking beyond fair debate either the reasonableness or substantial relationship this ordinance bears to a valid exercise of a municipal police power. To the contrary, the testimony of no less than three witnesses corroborates a direct relationship between the purpose of the ordinance, to wit, to preserve public health by regulating noise from late-night, commercial operations abutting residential property, and a valid exercise of a municipal police power. Testimony from Britton on rowdy tendencies of late-night customers and Walters on the questionable theory that running vehicles muffle excessive drive-thru operational noise enhances, rather than detracts, from the debatability of this ordinance.

Therefore, the trial court's finding that Ordinance No. 83-78 is unconstitutional as applied is hereby reversed. Assignments of error one, two and four are hereby sustained.

Appellants' third assignment of error states:

"III. The trial court erred in holding that appellee had met the required burden of proof of showing by clear and convincing evidence that the relationship of Ordinance No. 83-78 to the public health, safety and welfare is 'clearly erroneous' beyond a reasonable doubt."

The third assignment of error claims the trial court erred in finding clear and convincing proof that Ordinance No. 83-78 is not substantially related to a valid exercise of the police power.

Upon review, we find the trial court enumerated the proper standard, as set forth above. However, appellants, in correctly stating Burger King had not sustained its burden of proof beyond fair debate, erroneously interpret a requirement or finding by the trial court of clear and convincing evidence of invalidity. We find no evidence of this in the trial court's opinion. See *Central Motors Corp.* v. *Pepper Pike, supra.* To the extent the trial court found Burger King satisfied its burden of proof beyond fair debate, this assignment is sustained. As to the balance, the assignment is without merit and overruled.

Appellants' fifth assignment of error states:

"V. North Olmsted Ordinance No. 83-78 is not arbitrary or oppressive and does not unreasonably restrict the appellee's business."

The fifth assignment of error claims Ordinance No. 83-78 is neither arbitrary, oppressive nor an unreasonable restriction on trade. Though not addressed by the trial court in its opinion, no proof beyond fair debate can be found on this issue.

Burger King contends enforcement of the two-hundred-fifty-linear-foot setback requirement constitutes an unreasonable restraint on trade

since seventeen percent of its total sales and approximately $56,700 of its annual net profits come from late-night, drive-thru sales. However, every exercise of the police power impinges to some degree on an owner's unfettered use of property. Yet, the constitutional provisions against the taking of property must yield to a valid exercise of the police power if it bears "a real and substantial relation to the public health, safety, morals or general welfare of the public and * * * is [not] unreasonable or arbitrary." *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 4 O.O. 2d 113, 146 N.E. 2d 854, paragraph six of the syllabus. Having found a valid exercise of the police power, the constitutional prohibition must yield. Ordinance No. 83-78 narrowly restricts late-night, drive-thru operations of restaurants within two-hundred-fifty linear feet of any residence. It does not deprive Burger King or any other restaurant owner from alternatives, nor does it deprive owners from the whole use of the property. For the reasons stated, appellants' fifth assignment of error is sustained.

In summary, appellants' first, second, fourth and fifth assignments of error are sustained. Appellants' third assignment is sustained in part and overruled in part. North Olmsted Ordinance No. 83-78 is declared constitutional as applied, and the trial court's decision to the contrary is reversed. The injunction imposed by the trial court preventing North Olmsted's enforcement of Ordinance No. 83-78 against Burger King, its officers and/or agents is hereby vacated.

*Judgment accordingly.*

MARKUS, C.J., and DYKE, J., concur.

JAMES W. JACKSON, J., of the Court of Common Pleas of Lake County, sitting by assignment.