**[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 207.]**

GOLDBERG COMPANIES, INC., APPELLANT, *v.* COUNCIL OF THE CITY OF

RICHMOND HEIGHTS, APPELLEE.

[Cite as *Goldberg Cos., Inc. v. Richmond Hts. City Council*, 1998-Ohio-456.]

*Municipal corporations—Zoning—Zoning regulation presumed to be constitutional, when—No distinction between area and use regulations in terms of standard for a constitutional challenge.*

A zoning regulation is presumed to be constitutional unless determined by a court to be clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community. (*Gerijo, Inc. v. Fairfield* [1994], 70 Ohio St.3d 223, 638 N.E.2d 533, modified in part.)

(No. 96-84—Submitted September 10, 1997—Decided March 11, 1998.)

APPEAL from the Court of Appeals for Cuyahoga County, Nos. 68291 and 68292.

————————————

{¶ 1} In 1992, appellant Goldberg Companies, Inc. ("Goldberg") requested a parking variance and approval of a site plan in connection with Goldberg's plan to construct a sixty-two-thousand-square-foot retail building with 55,350 square feet of usable floor area at the intersection of Hillary Lane and Richmond Road in the city of Richmond Heights.

{¶ 2} The City of Richmond Heights Planning and Zoning Code requires retail stores to provide one parking space per hundred square feet of useable floor area. Goldberg's requested variance sought approval to provide three hundred seventy-two parking spaces instead of the required five hundred fifty-four to enable Goldberg to preserve a mature stand of trees at one end of the property. Goldberg's site plan then proposed a sixty-two-thousand-square-foot shopping center with three hundred seventy-two parking spaces. The city's Board of Zoning Appeals

("BZA") recommended approval of the requested variance to appellee Council of the City of Richmond Heights. The Planning and Zoning Commission recommended approval of the plan contingent upon the council's grant of the parking variance.

{¶ 3} On October 27, 1997, city council rejected the BZA's recommendation and denied the parking variance sought by Goldberg. The council stated that it found "no peculiar or special hardships applicable to the property" and that "the granting of the variance would be contrary to the purpose, intent and objectives of the Zoning Code and the Master Plan of the City." The council also rejected the Planning and Zoning Commission's recommendation and disapproved Goldberg's site plan.

{¶ 4} Goldberg appealed these decisions and also sought a declaratory judgment that the parking ordinance was unconstitutional and that the site plan was a permitted use. The trial court declared that the ordinance was not unconstitutional as applied. The court concluded that off-street parking is a legitimate government interest and that the ordinance did not deny Goldberg "the economic viable use of its land" because Goldberg would be able to otherwise develop the parcel. The court also determined that city council's decision to deny the parking variance was not illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of the evidence. The trial court affirmed city council's decisions.

{¶ 5} The court of appeals also affirmed, stating that it was bound by *stare decisis* to follow this court's holding in *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 638 N.E.2d 533. The court of appeals concluded that "in order to declare a zoning ordinance unconstitutional, the party seeking to invalidate the ordinance must demonstrate both that the ordinance denies the property owner an economically viable use of the property, and that it does not advance a legitimate governmental interest."

**{¶ 6}** This court accepted jurisdiction then dismissed the case on June 18, 1997 as having been improvidently allowed. *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1997), 79 Ohio St.3d 1205, 679 N.E.2d 716.

**{¶ 7}** The cause is now before this court upon the granting of a motion for reconsideration.

————————————

*Kahn, Kleinman, Yanowitz & Arnson Co., L.P.A., Sheldon Berns* and *Benjamin J. Ockner*, for appellant.

*R. Todd Hunt,* Director of Law; *Walter & Haverfield, P.L.L.,* and *Frederick W. Whatley,* for appellee.

————————————

**LUNDBERG STRATTON, J.**

**{¶ 8}** We are asked in this case to review the standard for challenging the constitutionality of zoning regulations and, in particular, the off-street parking regulation in the City of Richmond Heights Planning and Zoning Code. The court of appeals, bound by the doctrine of *stare decisis*, relied upon the two-part conjunctive test set forth in *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 638 N.E.2d 533. We take this opportunity to revisit the evolution of this two-part test, and, for the reasons that follow, we modify the syllabus law of *Gerijo*.

**{¶ 9}** Zoning ordinances, while intrinsically local in nature, are subject to constitutional scrutiny. Section 19, Article I, Ohio Constitution; Fifth Amendment to the United States Constitution. Decades of case law establish two unassailable propositions with respect to this court's determination of whether a zoning ordinance is constitutional:

(1) Zoning ordinances are presumed constitutional. *Cent. Motors Corp. v. Pepper Pike* (1995), 73 Ohio St.3d 581, 583-584, 653 N.E.2d 639, 642; *Mayfield-Dorsh, Inc. v. S. Euclid* (1981), 68 Ohio St.2d 156, 157, 22 O.O.3d 388, 388, 429

N.E.2d 159, 160; see, generally, *Dayton v. S.S. Kresge Co.* (1926), 114 Ohio St. 624, 629, 151 N.E. 775, 776.

(2) The party challenging the constitutionality of a zoning ordinance bears the burden of proof and must prove unconstitutionality beyond fair debate. *Cent. Motors*, 73 Ohio St.3d at 584, 653 N.E.2d at 642; *Mayfield-Dorsh*, 68 Ohio St.2d at 157, 22 O.O.3d at 388-389, 429 N.E.2d at 161; see, generally, *Willott v. Beachwood* (1964), 175 Ohio St. 557, 560, 26 O.O.2d 249, 251, 197 N.E.2d 201, 204; *Dayton*, 114 Ohio St. 624, 629, 151 N.E. 775, 776.

{¶ 10} We have no cause to reexamine these propositions, which have been restated and reaffirmed by this court on many occasions. However, we are compelled to reexamine the standard for determining the constitutionality of a zoning ordinance.

{¶ 11} There is a difference between a constitutional challenge to an ordinance as applied to a parcel of land and a constitutional challenge that also alleges that a taking of the property has occurred. The first seeks only a prohibition against the application of the ordinance to the property, whereas with the second, the landowner seeks compensation for a taking of the affected property. Although both types of cases allege the unconstitutionality of a zoning ordinance, in order for the landowner to prove a taking, he or she must prove that the application of the ordinance has infringed upon the landowner's rights to the point that there is no economically viable use of the land and, consequently, a taking has occurred for which he or she is entitled to compensation. A court may determine that a zoning ordinance is constitutional; however, the ordinance may nevertheless constitute a taking as applied to a particular piece of property, entitling the landowner to compensation.

{¶ 12} An overview of several zoning cases provides some insight into the differences between these types of cases. Historically, to prove that a zoning ordinance was unconstitutional, a landowner had to prove that the ordinance was

"clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303, 314. "The governmental power to interfere by zoning regulations * * * is not unlimited, and * * * cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare." *Nectow v. Cambridge* (1928), 277 U.S. 183, 188, 48 S.Ct. 447, 448, 72 L.Ed. 842, 844.

{¶ 13} The *Euclid* standard has generally been followed by Ohio courts in zoning cases where the landowner claims the ordinance is interfering with the use of the property. See *Mayfield-Dorsh, Inc. v. S. Euclid*, 68 Ohio St.2d 156, 22 O.O.3d 388, 429 N.E.2d 159; *Willott v. Beachwood*, 175 Ohio St. 557, 26 O.O.2d 249, 197 N.E.2d 201. However, in cases where the landowner alleges that the ordinance so interferes with the use of the property that it, in effect, constitutes a taking of the property, the landowner may prevail by proving that the ordinance has denied the landowner the economically viable use of his or her land. *Agins v. Tiburon* (1980), 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106.

{¶ 14} The landowner in *Agins* alleged that zoning ordinances were facially unconstitutional and so burdened his enjoyment of the property that they constituted a taking in violation of the Fifth and Fourteenth Amendments, for which he sought damages. The issue in *Agins* was not only the constitutionality of the ordinances' application to the Agins property but, more significantly, whether the enactment of the zoning ordinances constituted a taking. The court began its analysis with the following statement of law:

"The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests, see *Nectow v. Cambridge* * * *, or denies an owner economically viable use of his land, see *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 138 [98 S.Ct. 2646,

2666, 57 L.Ed.2d 631, 657], n. 36 (1978)." *Id.* at 260, 100 S.Ct. at 2141, 65 L.Ed.2d at 112.

{¶ 15} The *Agins* court concluded that there had been no taking because the ordinances substantially advanced legitimate governmental interests and they did not prevent the best use of the land or extinguish a fundamental attribute of ownership. Hence, the *Agins* test first addresses the constitutionality of a zoning ordinance using the *Euclid* or *Nectow* test, then considers whether the ordinance so burdened landowners' enjoyment of their property as to constitute a taking.

{¶ 16} The second part of the *Agins* test, whether the ordinance "denies an owner economically viable use of his land," comes from a footnote in the *Penn Central* case. In *Penn Central*, a landmarks-preservation law prevented the owners of Grand Central Terminal from building a fifty-three- or fifty-five-story office building atop the terminal. The owners sued the city, claiming that application of the law constituted a taking of the property and arbitrarily deprived its owners of their property without due process.

{¶ 17} The *Penn Central* court held that the owners had not established a taking because the law did not interfere with the owners' present use or prevent them from realizing a reasonable rate of return on the investment. The court noted that the owners' development rights in the property under the zoning laws were transferable to other parcels in the vicinity, giving some value to them. The court reasoned that "[t]he restrictions imposed are substantially related to the promotion of the general welfare and not only permit reasonable beneficial use of the landmark site but also afford [the landowners] opportunities further to enhance not only the Terminal site proper but also other properties." *Penn Central,* 438 U.S. at 138, 98 S.Ct. at 2666, 57 L.Ed.2d at 657.

{¶ 18} In a footnote, the court noted:

"We emphasize that our holding today is on the present record, which in turn is based on Penn Central's present ability to use the Terminal for its intended

6

purposes and in a gainful fashion.  The city conceded at oral argument that if [the landowners] can demonstrate at some point in the future that circumstances have so changed that the Terminal ceases to be *'economically viable,'* [the landowners] may obtain relief." (Emphasis added.)  *Id*. at fn. 36.

{¶ 19} This court considered the economic viability of the land in a taking case when Cincinnati landowners claimed that a zoning ordinance was unconstitutional as applied to their property and also alleged a taking of their property that required just compensation.  *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 526 N.E.2d 1350.  The court first considered the constitutionality of the ordinance at issue.  Relying on *Mayfield-Dorsh* and *Euclid v. Ambler,* the court stated the appropriate standard:

"To strike a zoning ordinance on constitutional grounds appellants must demonstrate, beyond fair debate, that the zoning classification is unreasonable and not necessary to the health, safety and welfare of the municipality." *Karches*, 38 Ohio St.3d at 19, 526 N.E.2d at 1357.

{¶ 20} Because the landowner also alleged a taking, the court, citing *Agins* and *Penn Central,* also stated:

"Appellants must demonstrate that the ordinance denies to them the economically viable use of their land without substantially advancing a legitimate government interest." *Id.*

{¶ 21} The *Karches* court then made two findings: the first as to the constitutionality of the zoning ordinance and the second as to whether a taking had occurred.

{¶ 22} The *Karches* analysis was repeated in *Ketchel v. Bainbridge Twp*. (1990), 52 Ohio St.3d 239, 557 N.E.2d 779.  The owners petitioned to reclassify the zoning of a two-hundred-fifty-six-acre tract of mostly undeveloped land.  When township trustees refused to amend the classification, the owners challenged the

zoning classification's constitutionality. They *did not* allege a taking of their property; yet, in its analysis, the court stated:

"In order to invalidate a zoning regulation on constitutional grounds, the parties attacking it must demonstrate, beyond fair debate, that the zoning classification denies them the economically viable use of their land without substantially advancing a legitimate interest in the health, safety, or welfare of the community." *Ketchel*, 52 Ohio St.3d at 243, 557 N.E.2d at 783.

**{¶ 23}** *Ketchel* combined two different standards, one for challenging constitutionality and one for establishing a taking, and created a new one applicable to all zoning challenges, not just those alleging a taking. This new standard then appeared in *Columbia Oldsmobile, Inc. v. Montgomery* (1990), 56 Ohio St.3d 60, 564 N.E.2d 455, as a "two-part analysis." However, the sole issue in *Columbia* was the constitutionality of a zoning classification as applied to an 11.5-acre parcel of land. Columbia *did not* allege that a taking had occurred. Yet the court considered whether the ordinance allowed the landowner an economically feasible use of the parcel even though a taking was not at issue.

**{¶ 24}** This court upheld the two-part test in *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 638 N.E.2d 533. Gerijo, Inc. challenged the constitutionality of a zoning scheme, but *did not* allege that the zoning constituted a taking. Today, we revisit and modify that holding. We are convinced that *Gerijo* established an unduly broad standard that encompassed both the standard for challenging the constitutionality of zoning regulations and the test to prove a taking. The *Agins* test is not applicable to a constitutional challenge of a zoning regulation unless a taking of the subject property is also at issue. We reestablish the *Euclid v. Ambler* test as the appropriate standard applicable to constitutional challenges of zoning. This approach is not only supported by law, it is also the most logical one.

**{¶ 25}** A zoning regulation may be either constitutional or unconstitutional based upon whether it is "clearly arbitrary and unreasonable, having no substantial

relation to the public health, safety, morals, or general welfare" regardless of whether it has deprived the landowner of all economically viable uses of the land. *Euclid v. Ambler*, 272 U.S. at 395, 47 S.Ct. at 121, 71 L.Ed. at 314. If the landowner has challenged the constitutionality of zoning and also alleged that it constitutes a taking of the property, the case is terminated if the zoning is found to be unconstitutional, because the landowner is free of the zoning that restricted the use of the land. However, if the zoning is determined to be constitutional, a court may then consider whether the zoning, as applied to this property, constitutes a taking so as to entitle the owner to compensation. In such a case, the zoning remains in effect as a legitimate exercise of police power for the public welfare.

{¶ 26} In the case at bar, Goldberg challenged the constitutionality of an ordinance that regulated parking spaces as that ordinance applied to its property. Goldberg did not allege that the ordinance's application prohibited all economically viable uses of the property so as to constitute a taking. A requirement on the number of parking spaces did not deprive Goldberg of the use of its property. It did not prohibit Goldberg from building on the property. Goldberg's property remained economically viable. Therefore, this court's only inquiry need be whether the ordinance was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Id*.

{¶ 27} We make no distinction between area and use regulations in terms of a standard for a constitutional challenge. Both types of regulations have the potential to prevent a landowner's practical use of property. For example, a use regulation may directly prohibit a landowner from building a house on a piece of property. On the other hand, where use regulations would allow housing, a setback regulation might nevertheless prevent construction of a house.

{¶ 28} A municipality or other zoning body is justified by its police powers to enact zoning for the public welfare and safety. The powers, not unlimited, need only bear a rational relation to the health, safety, morals or general welfare. *Euclid*

*v. Ambler,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed 303.  So long as the area or use regulation satisfies this criterion, we need make no distinction between them in terms of constitutional scrutiny. The rationale underlying the *Euclid* test may apply to either type of regulation.

{¶ 29} Therefore, we reinstate the test set forth in *Euclid v. Ambler* and hold that a zoning regulation is presumed to be constitutional unless determined by a court to be clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community.  The burden of proof remains with the party challenging an ordinance's constitutionality, and the standard of proof remains "beyond fair debate."  See *Cent. Motors*, 73 Ohio St.3d at 584, 653 N.E.2d at 642.

{¶ 30} We reverse and remand this matter to the trial court to determine whether Goldberg established the standard we set forth today for challenging the constitutionality of a zoning ordinance.  We also remand the remaining issues involving the denial of Goldberg's parking variance request and rejection of its site plan to be decided consistent with the issue of the constitutionality of the zoning ordinance.

*Judgment reversed*

*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____