JAYLIN INVESTMENTS, INC., Appellee,

v.

VILLAGE OF MORELAND HILLS, Appellant.

[Cite as *Jaylin Investments, Inc. v. Moreland Hills,*
157 Ohio App.3d 277, 2004-Ohio-2689.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 82739.

Decided May 27, 2004.

Berns, Ockner & Greenberger, LLC, Sheldon Berns, Paul M. Greenberger and Benjamin J. Ockner, for appellee.

Leonard A. Spremulli and Santo T. Incorvaia, for appellant.

TIMOTHY E. McMONAGLE, Judge.

{¶ 1} Defendant-appellant, village of Moreland Hills, appeals from the judgment of the Cuyahoga County Common Pleas Court that declared the village's prohibition against the proposed use of a parcel of property owned by plaintiff-appellee, Jaylin Investments, Inc., to be unconstitutional and ordered the village to issue the necessary permits for construction. For the reasons that follow, we reverse.

{¶ 2} The record reveals that Jaylin Investments, Inc. ("Jaylin") is a real estate development company and the owner of an 18–acre parcel of property in the village of Moreland Hills (the "village") that abuts a hillside north of Chagrin Boulevard. It is undisputed that the parcel is zoned for single-family residential use and that the village has an ordinance that requires each single-family parcel of property to be two acres in size. Jaylin claims that access to this property is only through an area of older, more modest and smaller lot-sized homes. As such, Jaylin contends that compliance with the two-acre requirement would make any homes constructed there unmarketable given the surrounding area and has proposed building 29 homes on one-half acre lots on this parcel of property.

{¶ 3} The case proceeded to a bench trial, at which time Jaylin presented the testimony of (1) Charles Chudakoff, the owner of Jaylin; (2) Robert Hill, a city planner and landscape architect; (3) Roger Ritley, a planning consultant who

conducted an impact study on Jaylin's proposed use of the property; and (4) Terrence Gerson, a professional engineer and land surveyor who previously served as the village's engineer. Succinctly, these witnesses testified that two-acre development of the parcel of property at issue would be "out of harmony" with the existing, older homes in the residential area and, as such, the current two-acre zoning requirement does not advance the public health, safety, and general welfare of the city.

{¶ 4} The village, on the other hand, presented the testimony of Laura DeYoung, an environmental planner, and Jeff Filarski, a civil engineer with the village. Succinctly, these witnesses testified that the two-acre zoning requirement advances the village's interest in protecting its natural resources, which the village claims is a legitimate governmental interest. They also testified regarding the corresponding negative environmental impact upon the property should Jaylin succeed in developing the land as proposed.

{¶ 5} In the judgment entry that followed, the trial court found the prohibition against Jaylin's proposed use to be unreasonable because it failed to substantially advance the village's "health, safety, morals or welfare concerns." The court thereafter declared the prohibition against the proposed use to be "arbitrary, capricious and unreasonable and * * * therefore, unconstitutional" as applied to the property. It further ordered the village "to issue all approvals and permits for the construction" according to Jaylin's plan for proposed use.

{¶ 6} The village is now before this court and assigns four errors for our review. Because the village's first, second, and fourth assignments of error essentially challenge the trial court's decision finding the village's prohibition against Jaylin's proposed use of the property to be unconstitutional, they will be discussed together.

{¶ 7} Although subject to constitutional scrutiny, zoning ordinances are presumed to be constitutional. *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1998), 81 Ohio St.3d 207, 209, 690 N.E.2d 510. The party challenging that aspect of a particular zoning ordinance bears the burden of proving that the ordinance is unconstitutional "beyond fair debate." Id.

{¶ 8} The *Goldberg* court clarified the test to be employed when analyzing the constitutionality of a zoning ordinance:

{¶ 9} "Therefore, we reinstate the test set forth in *Euclid v. Ambler* [*Realty Co.* (1926), 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303] and hold that a zoning regulation is presumed to be constitutional unless determined by a court to be clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community. The burden of proof remains with the party challenging an ordinance's constitutionality, and the

standard of proof remains 'beyond fair debate.'" Id., 81 Ohio St.3d at 214, 690 N.E.2d 510; see, also, *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350.

{¶ 10} Although constitutional challenges to a municipal ordinance may allege that the existing ordinance constitutes a taking of the property, a party may merely allege that the ordinance is unconstitutional as applied to a particular parcel of property, as Jaylin does in this case. *Goldberg*, 81 Ohio St.3d at 210, 690 N.E.2d 510, citing *Agins v. Tiburon* (1980), 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106; see, also, *Shemo v. Mayfield Hts.* (2000), 88 Ohio St.3d 7, 9, 722 N.E.2d 1018. Consequently, we confine our discussion to whether the village's ordinance is unconstitutional as applied to the particular parcel of property at issue in this case.[1] *Goldberg*, 81 Ohio St.3d at 213, 690 N.E.2d 510.

{¶ 11} With this standard in mind, we acknowledge that every reasonable presumption must be made in favor of the trial court's judgment and its findings of fact. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273; see, also, *Shemo*, 88 Ohio St.3d at 10, 722 N.E.2d 1018. If there is competent, credible evidence to support that judgment, a reviewing court will not disturb it as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. The converse is true, however, where such evidence does not exist. Nonetheless, a court reviewing a zoning ordinance must not substitute its judgment for that of the legislative body charged with the duty of enacting the ordinance. *Cent. Motors Corp. v. Pepper Pike*, 73 Ohio St.3d at 584, 653 N.E.2d 639; see, also, *Willott v. Beachwood* (1964), 175 Ohio St. 557, 560, 26 O.O.2d 249, 197 N.E.2d 201.

---

1. We note parenthetically that the trial court, as well as Jaylin, obfuscates the analysis that must be undertaken when a party seeks declaratory relief as to the constitutionality of an ordinance. R.C. 2721.03 is specific in its directive—it is the constitutionality of the ordinance that is subject to review. Whether the ordinance is constitutional on its face or as applied is the issue. See *Visconsi–Royalton, Ltd. v. Strongsville* (2001), 146 Ohio App.3d 287, 765 N.E.2d 971; see, also, *Cent. Motors Corp. v. Pepper Pike* (1995), 73 Ohio St.3d 581, 586, 653 N.E.2d 639 (whether proposed zoning better advances the stated governmental interest does not address the issue of whether the zoning ordinance at issue advances a legitimate government interest). An *applied* challenge may include a discussion of the prohibition against proposed use, but it is not the prohibition against proposed use that must be analyzed in terms of whether it is arbitrary, unreasonable, and without substantial relation to the public health, safety, and welfare of the community. It is the ordinance *as applied* to the particular property that must be so analyzed. Id. Consequently, the focus is on the ordinance at issue, not the property owner's proposed use of that property. The trial court in its opinion interchangeably addresses not only the prohibition against proposed use but the ordinance as applied to the property. Because one subsumes the other, we will construe not only Jaylin's arguments, but the court's interpretation, as an applied challenge to the ordinance's constitutionality.

{¶ 12} We cannot agree with the trial court that Jaylin demonstrated beyond fair debate that the village's two-acre zoning ordinance is arbitrary, unreasonable, and without substantial relation to the public health, safety, and welfare of the community as applied to the property at issue in this case.

{¶ 13} Jaylin's city planning witness, Robert Hill ("Hill"), testified that most of the homes on Ellendale and Berkeley, the streets accessing the Jaylin property, were built sometime in the 1930s or 1940s, before the enactment of the village's two-acre lot requirement. Indeed, the village's witness, Laura DeYoung ("De-Young"), testified that the two-acre requirement was a part of a comprehensive land-use plan enacted in 1973, the objectives of which were to (1) preserve existing natural features by minimizing disturbances to topography, vegetation, drainage patterns, and wildlife; (2) optimally utilize and preserve usable open space; and (3) promote compatible development. In furthering these objectives, the village passed a resolution in 1992 designating the Chagrin River Valley as a scenic, natural, and cultural resource district, which the village intended to "protect by administrative and legislative action such as hillside protection, waterway corridor and wetland protection, terrain alteration control, storm water runoff control, erosion and sediment control, and scenic corridor protection and nonregulatory strategies such as the use of local land conservancy." It is undisputed that not only is the village located in the Chagrin River Valley, but it, as well as Jaylin's property, is part of the Chagrin River watershed.[2] The legislation that the village eventually enacted as a result of this resolution included ordinances protecting its hillside property and controlling erosion and sedimentation.

{¶ 14} DeYoung testified that she observed varying degrees of woodlands on the Jaylin property, which vary in value in terms of public health and safety.

{¶ 15} "When you look at a woodland resource, for example, or a wetland resource, some have more value [than] others in terms of species, diversity, uniqueness of habitats, disturbance, etcetera. Also, by the same token, if they're higher quality, then they're going to be providing better public health, safety, and welfare functions, such as protecting water quality, preventing erosion if the vegetation is intact, preventing flooding, for example."

{¶ 16} She further testified that woodland resources contribute not only to air quality, but water quality as well:

{¶ 17} "The woodland resources, or what we call riparian woodlands—wood-lands within that riparian zone[,] protect the water quality of those water

---

2. DeYoung defined "watershed" as an area where all land drains into watercourses, also known as drainage basins. As applicable to the Chagrin watershed, everything drains into the Chagrin River and eventually into Lake Erie.

resources. In addition to protecting water quality, they also contribute to preventing erosion and preventing sedimentation and flooding problems downstream within the watershed."

{¶ 18} In terms of the varying degrees of woodlands present on the Jaylin property, DeYoung testified that a compliant development project, one that complies with the two-acre lot requirement, would have minimal impact on woodland resources. Specifically, she testified that a compliant project would disturb 25 percent of the woodland resources. A noncompliant project, such as that which Jaylin proposes, would have a greater impact in that 63 percent of the woodland resources would be lost. In this regard, she testified that the current two-acre, low-density development contributes to protecting the public health, safety, and welfare of the community by preserving topographic vegetation, drainage patterns, and wildlife. Furthermore, DeYoung opined that lower density development preserves resources that contribute to protecting water quality, air quality, and preventing hazards or environmental problems, such as flooding or erosion, and is the predominant tool being used by communities to protect environmental resources.

{¶ 19} The trial court apparently discounted this testimony because of DeYoung's miscalculations of slope degree and her resulting conclusions regarding Jaylin's infringement of the village's hillside ordinance. From the record we glean that, for whatever reason, DeYoung miscalculated the degree of slope of the property. The village stipulated as much. Jaylin, nonetheless, conceded that DeYoung's reliance on an exhibit indicating the wetlands is accurate. Thus, in the absence of testimony to the contrary, the balance of DeYoung's testimony need not be discounted merely because her conclusions regarding any potential violation of the village's hillside ordinance were based on a faulty premise. Instead, the trial court placed great weight on what Jaylin would do to the property in an effort to accommodate the village if permitted to develop the land in accordance with its proposed use. This included building one or more retention basins on the property to prevent water runoff, building a new or expand an existing wastewater treatment plant and engaging a geotechnical surveyor to ensure compliance with the village's hillside ordinance. Without going into any detail as to the environmental impact, Jaylin's witness, Terrence Gerson ("Gerson"), merely testified that the impact on the Chagrin River Basin would be "very small." Without more, it cannot be said that Jaylin proved beyond fair debate that the village's environmental concerns were not valid or the ordinance was otherwise unconstitutional.

{¶ 20} On the other hand, Jaylin gave considerable testimony as to the *economic* impact of developing the land in accordance with the village's current two-acre lot requirement. It is in this regard that Hill opined that the existing

zoning restriction does not further the public health, safety, and general welfare of the village. Hill based this opinion on the uniqueness of the property. Continuing, he testified as follows:

{¶ 21} "Not only is the access to this property via older streets with smaller houses, but the configuration of the property itself. In other words, the parameters of the property are such that it's an extremely difficult piece to develop and it's almost impossible to reasonably develop it on a two-acre minimum."

{¶ 22} He later qualified this testimony, stating that from an "economic standpoint," it would be impossible to develop unless cost was not an issue.

{¶ 23} Jaylin's owner, Charles Chudakoff ("Chudakoff"), testified that his proposed plan features 3,000–4,000 square foot homes in the $500,000 to $600,000 price range built on one-half acre lots. He testified that building 29 homes is the minimum necessary to be cost effective, i.e., marketable, given the value of the surrounding homes that a prospective buyer must pass in order to access his proposed development. .It is undisputed, however, that the homes Jaylin proposes are comparable in size and price to those in the Quail Hollow subdivision, which is a subdivision built in compliance with the two-acre lot requirement that abuts the Jaylin property but is physically separated from it by a steep ravine. Chudakoff further testified that he decided on 29 homes for his proposed development because he wanted the development to have its own "identity" separate and apart from the homes on Ellendale and Berkeley.

{¶ 24} This testimony was supported by Roger Ritley ("Ritley"), who testified that building in compliance with the two-acre lot requirement did not give enough "critical mass" or "new residential value" to offset the effect of the older, surrounding homes when compared to the cost to build, which, according to the village's engineer, vary in size from one-half acre to 2.8 acres with an average of little more than one acre for homes on both Ellendale and Berkeley. Ritley further testified that the proposed plan with 29 homes was a "mass able to overcome the detrimental environment," which could "compete successfully with emerging suburban demographics," and allow "sustained value." In Chudakoff's opinion, building in compliance with the village's two-acre lot requirement would not be economically feasible. Indeed, Jaylin conceded that it is an economic issue, that the property cannot be developed in compliance with the village's ordinance and, consequently, the land has no value.

{¶ 25} Jaylin's testimony regarding economic feasibility, however, does not invalidate the village's environmental concerns or otherwise prove beyond fair debate that the village's two-acre lot requirement bears no substantial relationship to the public health, safety, or welfare of the community. To be sure, such an argument may withstand a constitutional challenge as pertains to a taking of

the property, where economic viability is critical in establishing whether a taking has occurred. See *Goldberg*, 81 Ohio St.3d at 210, 690 N.E.2d 510. Jaylin concedes, however, that it is not alleging that the ordinance constitutes a taking of its property. Without more, it cannot be said that Jaylin demonstrated beyond fair debate that the two-acre zoning ordinance as applied to this particular parcel of property is unconstitutional. It failed to demonstrate that the ordinance is arbitrary, unreasonable, and bears no substantial relation to the public health, safety, and welfare of the community, especially in light of testimony presented by the village that the two-acre zoning requirement advances a legitimate environmental interest.

{¶ 26} The village's first, second, and fourth assignments of error are well taken, in part, and sustained. Due to our disposition of these errors, we need not address the village's third assignment of error seeking alternative relief. See App.R.12(A)(1)(c).

{¶ 27} Because Jaylin failed to demonstrate that the ordinance at issue is unconstitutional as applied, we reverse the judgment of the trial court and enter judgment for the village.

{¶ 28} It is ordered that appellant recover from appellee costs herein.

Judgment reversed.

ANNE L. KILBANE, P.J., and FRANK D. CELEBREZZE JR., J., concur.