[Cite as *Land Dev. Mgt., L.L.C. v. Lancaster*, 2012-Ohio-3136.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| LAND DEVELOPMENT MANAGEMENT, LLC | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellant | Hon. John W. Wise, J. |
| -vs- | |
| CITY OF LANCASTER, OHIO | Case No. 11-CA-47 |
| Defendant-Appellee | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Case No. 10CV1367 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT: | July 9, 2012 |


APPEARANCES:

For Plaintiff-Appellant

RAY R. MICHALSKI
222 South Broad Street
Lancaster, OH  43130

For Defendant-Appellee

LAURA MACGREGOR COMEK
5000 South Front Street
Suite 1200
Columbus, OH  43215

RANDALL T. ULLOM
123 East Chestnut Street
P.O. Box 1008
Lancaster, OH  43130

*Farmer, J.*

{¶1}    On October 29, 2010, appellant, Land Development Management, LLC, filed a declaratory judgment action against appellee, city of Lancaster, Ohio, challenging the constitutionality of a zoning classification as applied to appellant's property.   The property was zoned as a Commercial Neighborhood District (hereinafter "CN") and prohibited an automobile sales and servicing business which appellant's potential tenant desired to open.   Appellant had requested a use variance, but was denied.   Thereafter, the Lancaster City Engineer filed a rezoning application to rezone appellant's property to a "Commercial General District" (hereinafter "CG"), but appellee denied the application.

{¶2}    Appellee filed a motion for summary judgment on June 30, 2011.   By memorandum of decision filed August 24, 2011 and judgment entry filed August 26, 2011, the trial court granted the motion.

{¶3}    Appellant filed an appeal and this matter is now before this court for consideration.   Assignments of error are as follows:

I

{¶4}    "THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT INSOFAR AS THE APPELLEE WAS NOT ENTITLED TO A JUDGMENT AS A MATTER OF LAW BECAUSE THE SUBJECT ZONING CLASSIFICATION, AS APPLIED TO APPELLANT'S PROPERTY, IS CLEARLY ARBITRARY AND UNREASONABLE, HAVING NO SUBSTANTIAL RELATION TO THE PUBLIC HEALTH, SAFETY, MORALS, OR GENERAL WELFARE AND BECAUSE THE DISTINCTION BETWEEN THE ZONING CLASSIFICATION OF APPELLANT'S PROPERTY AND THAT OF OTHER SIMILARLY SITUATED

PROPERTIES BEARS NO RATIONAL RELATIONSHIP TO A LEGITIMATE GOVERNMENT OBJECTIVE."

I

{¶5} Appellant claims the trial court erred in granting summary judgment to appellee. We disagree.

{¶6} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:

{¶7} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."

{¶8} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35.

{¶9} Appellant challenges the zoning classification as unconstitutional as it applies to its property. Appellant argues the zoning classification is arbitrary and

unreasonable and has no substantial relation to the public health, safety, morals or general welfare of the community.

{¶10} In its appellate brief at 10, appellant concedes there are no material facts in dispute. The facts are as follows:

{¶11} 1. The subject property is located in a "Commercial Neighborhood District" or "CN" under Section 1133.02 of the Planning and Zoning Code for the City of Lancaster. Subsection (b)(1-14) of the ordinance includes an extensive listing of permitted uses.

{¶12} 2. The use desired to be operated by appellant's potential tenant (an automobile sales and servicing business) is not a permitted use in a CN, but is a permitted use in a "Commercial General District" or "CG". See, Section 1133.03 of the Planning and Zoning Code for the City of Lancaster.

{¶13} 3. The subject property from 1939 to 2000 (the date of the enactment of the current zoning code) was classified as light industrial which would have been consistent with appellant's desired use.

{¶14} 4. Appellant purchased the property subsequent to 2000. After discovering the zoning issue relative to an automobile sales and servicing business, appellant requested a use variance, but was denied. No appeal pursuant to R.C. Chapter 2506 was taken from this decision. Thereafter, the Lancaster City Engineer filed a rezoning application to rezone appellant's property to a CG, but appellee denied the application.

{¶15} 5. Also uncontested is the fact that with the enactment of the new comprehensive zoning code in 2000, appellant's property was the only property on the

east side of North Columbus Street to be zoned a CN. The adjacent properties were zoned as CGs. In fact, with the enactment of the 2000 Planning and Zoning Code, twenty-one properties on the east and west sides of North Columbus Street were zoned as CGs except for two: appellant's property and the "Marshall Property," a residential property.

{¶16} Primarily, we note appellant challenges the exhibits attached to appellee's motion for summary judgment as not being evidentiary quality pursuant to Civ.R. 56(E). Appellant's Brief at 11. No challenge to these exhibits was made to the trial court. Further, the exhibits attached are materials that are either attached in part to appellant's original complaint or are part of the undisputed facts. Therefore, we find this challenge to be waived.

{¶17} The constitutional challenge advanced by appellant is a challenge to the ordinance "as applied" to appellant's specific property. As such, appellant seeks only a prohibition against the application of the CN zoning to its property and does not allege a "taking" of the property.

{¶18} As Justice Lundberg Stratton explained in *Goldberg Companies, Inc. v. Richmond Heights City Council,* 81 Ohio St.3d 207, 212-213, 1998-Ohio-207, the standard to be employed is as follows:

{¶19} " 'To strike a zoning ordinance on constitutional grounds appellants must demonstrate, beyond fair debate, that the zoning classification is unreasonable and not necessary to the health, safety and welfare of the municipality.' *Karches* [*v. Cincinnati* (1988)], 38 Ohio St.3d at 19, 526 N.E.2d at 1357.

{¶20} "***

{¶21} "A zoning regulation may be either constitutional or unconstitutional based upon whether it is 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare' regardless of whether it has deprived the landowner of all economically viable uses of the land."

{¶22} As stated in *Goldberg,* our standard in determining appellant's challenge is whether the ordinance is clearly arbitrary and unreasonable and has no substantial relation to the public health, safety, morals or general welfare of the community.

{¶23} The crux of appellant's challenge is that the CN zoning of its property and the Marshall Property, in a sea of some nineteen other parcels zoned as CGs which is a less restrictive use, is arbitrary and unreasonable. Appellant claims it is a "taking" of its property and it is denied the viable use of the property.

{¶24} In *Jaylin Investments, Inc. vs. Moreland Hills,* 107 Ohio St.3d. 339, 2006-Ohio-4, ¶21, Justice Lundberg Stratton again addressed the constitutionality of the "as applied" issue as follows:

{¶25} "If we were to modify this rule as Jaylin advocates, we would effectively eliminate the initial presumption that the zoning is constitutional. Opposing parties would merely argue over who presents the better use of the property. 'The power of a municipality to***determine land-use policy is a legislative function which will not be interfered with by the courts, unless such power is exercised in such an arbitrary, confiscatory or unreasonable manner as to be in violation of constitutional guaranties.' *Willott v. Beachwood,* 175 Ohio St. 557, 26 O.O.2d 249, 197 N.E.2d 201, paragraph three of the syllabus. 'Municipal governing bodies are better qualified, because of their

knowledge of the situation, to act upon these matters than are the courts.' Id. at 560, 26 O.O.2d 249, 197 N.E.2d 201."

{¶26} In reaching this affirmation, Justice Lundberg Stratton points out the emphasis in an "as applied" case is centered on the legislative action and not the property uses of the alleged aggrieved:

{¶27} "The analysis focuses on the legislative judgment underlying the enactment, as it is applied to the particular property, not the municipality's failure to approve what the owner suggests may be a better use of the property. If application of the zoning ordinance prevents an owner from using the property in a particular way, the proposed use is relevant but only as one factor to be considered in analyzing the zoning ordinance's application to the particular property at issue." *Jaylin,* at ¶18.

{¶28} We will use the decisions of the Supreme Court of Ohio as a template in our analysis. We note no evidence was taken by the trial court nor were any affidavits presented as to legislative purpose. The legislation, Chapter 1133 of the Planning and Zoning Code of the City of Lancaster, incorporates the rationale and purposes of the ordinances as follows:

{¶29} "1133.01 ESTABLISHMENT AND PURPOSE.

{¶30} "There are hereby established four (4) Commercial Districts. These Commercial Districts are designed to:

{¶31} Encourage the provision of suitable areas for commercial growth and development within the City.

{¶32} Meet the needs for commercial goods and services within the community.

{¶33} Promote a range of diverse commercial environments.

{¶34} Encourage a compatible relationship between commercial facilities and other land uses.

{¶35} Facilitate the planning for the cost effective provision of streets, utilities, and other public facilities to serve commercial facilities (Ord. 42-05. Passed 6-27-05.)

{¶36} "1133.02(CN) COMMERCIAL NEIGHBORHOOD DISTRICT.

{¶37} "(a) Purpose. The (CN) Commercial Neighborhood District is designed to provide for the orderly development of neighborhood-oriented businesses serving the regular day-to-day convenience and personal service needs of nearby residents. Because commercial establishments within the CN District are more closely associated with the residential land uses, more restrictive requirements related to size and scale, traffic control and landscaping are needed than in other commercial districts.

{¶38} "1133.03 (CG) COMMERCIAL GENERAL DISTRICT.

{¶39} "(a) Purpose. The (CG) Commercial General District is designed to provide for a broad range of business activity oriented toward community and/or regional markets. Such business uses, by their nature, rely on higher volumes of customer traffic and generally have higher impact levels on adjacent uses. The intent of the CG District is to encourage the most compatible relationship between permitted uses and overall traffic movement within the City, while minimizing negative impacts on adjacent land uses."

{¶40} Appellant argues the legislation is unconstitutional because (1) the property prior to 2000 was used and zoned for light industrial purposes and (2) the property was "singled out" as a CN while leaving the adjacent lots as CGs.

{¶41} In reviewing the "Permitted Uses" in a CN vis-á-vis the "Permitted Uses" in a CG, we find the major distinction is the inclusion in a CG of commercial recreational facilities, lumber and home improvement sales, automobile sales and services, theaters, hotels and motels, and garden centers. See, 1133.03(b)(12)-(17).

{¶42} When viewed in light of the general purposes clauses of the two classifications, we find the distinction to be reasonable. Those included in a CG that are not in a CN create high volumes of customer traffic and have a higher impact on adjacent uses. Therefore, the delineation between the two classifications is reasonable and not arbitrary and does have a relation to the public safety and health.

{¶43} Appellant argues it has been "singled out" and points to his neighbors along North Columbus Road who are designated as CGs. As the maps attached to the pleadings and the summary judgment motion illustrate, within appellant's block, appellant's property is the only property zoned as a CN while the other properties are zoned as CGs. Across North Columbus Road, save for the Marshall Property, twelve lots are zoned as CGs. However, what appellant fails to point out is its lot is a corner lot with its major frontage on another street where the adjacent properties are zoned RS-3 and RS-4.

{¶44} It is correct when viewed from a North Columbus Road standard, appellant appears to have been singled out. However, when viewed from the major frontage street or alley (unnamed), the property is in a RS-3/RS-4 area; therefore, its property has not been "singled out" to the less restrictive use. Further, when viewing the area from a "birds-eye view," it is obvious the area continuing north and west on North Columbus Road, a state route, is not a high density area as is the area of

appellant's property.   The area bordered by the unnamed road, which is one-way eastbound, Marks Avenue, North Broad Street, and Wilson Avenue, is a high density area and contains residential parcels, the greater portion of which is R-4.

{¶45} Given the above observations, we find appellant's property was not singled out to a more restrictive use, but was given a more restrictive use given the entire area.

{¶46} We conclude the trial court was correct in finding the zoning as it pertains to appellant's property was not unconstitutional.

{¶47} Appellant also argues the zoning violates the equal protection clause, as its property is being treated like the Marshall Property which is improved by a residence and differently than the Danison Property which is the only other industrial building in the area which is zoned as a CG.   As pointed out by the attachments to appellant's memorandum contra motion filed July 27, 2011, the Danison Property is on the west side of North Columbus Road and is across the street and north of appellant's property.

{¶48} In *Kruppa v. City of Warren,* Trumbull App. No. 2009-T-017, ¶34-38, our brethren from the Eleventh District fully explained the Equal Protection guarantees as follows:

{¶49} "The Fourteenth Amendment to the United States Constitution provides that '[no] State shall***deny to any person within its jurisdiction the equal protection of the laws.'

{¶50} " 'The limitations placed upon governmental action by the Equal Protection Clauses of the Ohio and United States Constitutions are essentially identical.'***When

the government treats similarly situated individuals differently, such action implicates equal protection.***

{¶51} "It is fundamental that legislation cannot be attacked merely because it creates distinctions and thereby classifies the subjects of a law because legislation, by its very nature, treats people by groups and classes and must, of necessity, draw its lines based upon 'amalgamations of factors.'***

{¶52} "Further, in the absence of a fundamental right or suspect class, a legislative classification will be upheld if it is rational.***Because no fundamental right or suspect class is involved here, the rational basis test is applicable to determine whether Sec. 1367.10 violates equal protection.  Pursuant to this test, an ordinance will be held to be constitutional if it is rationally related to any legitimate governmental interest.***Enactments of the legislature are valid if 'they bear a real and substantial relation to the object sought to be obtained, namely, the health, safety, morals or general welfare of the public, and are not arbitrary, discriminatory, capricious or unreasonable.***The federal test is similar.  To determine whether such statutes are constitutional under federal scrutiny, we must decide if there is a rational relationship between the statute and its purpose.'  (Internal citations omitted.)***In *Police Department of the City of Chicago v. Mosley* (1972), 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212, the Supreme Court held: 'As in all equal protection cases,***the crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment.' *Id.* at 95.

{¶53} "In applying the rational basis test, a court will not overturn a statute unless the varying treatment of different groups or persons is so unrelated to the

achievement of a legitimate governmental purpose that the court can only conclude the legislature's actions were irrational.***"  (Citations omitted.)

{¶54} The issue is whether the zoning treats similarly situated properties differently.  Appellant argues its property and the Danison Property were zoned light industrial use prior to 2000.  Now the properties in close proximity are zoned differently. It should be noted that the Danison Property's use, a monument business, is permitted in both CN and CG classifications.  Therefore, the nature of the businesses' purposes is entirely different.  Also, the Danison Property is across the street in a less dense area than appellant's property.  Although close in proximity, the quality and nature of the two areas are different.

{¶55}  Appellant argues there is no appropriate governmental interest that would validate treating the two properties differently.  As we noted supra, the purpose clause of a CN area is different than a CG area.  In a CN area, the purpose centers upon "neighborhood oriented business" where in a CG area, the business activity generates high volume traffic at higher impact levels.

{¶56}  An observation of the two areas establishes that appellant's property is the sole residential/business building in an area that for blocks is residential in nature.  The Danison Property is in a less dense area and is not similarly located in a comparable area.

{¶57}  We find appellee has set forth a legitimate governmental interest in the two, albeit similar, zoning classifications.  There is also no convincing evidence that appellant's property and the Danison Property are similarly situated properties.

{¶58} Upon review, we find the trial court did not err in granting summary judgment to appellee.

{¶59} The sole assignment of error is denied.

{¶60} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Wise, J. concur.


_s/ Sheila G. Farmer_____


s/ William B. Hoffman_____


s/ John W. Wise_____

JUDGES


SGF/sg 614

[Cite as *Land Dev. Mgt., L.L.C. v. Lancaster*, 2012-Ohio-3136.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| LAND DEVELOPMENT MANAGEMENT, LLC | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| CITY OF LANCASTER, OHIO | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. 11-CA-47 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio is affirmed. Costs to appellant.

s/ Sheila G. Farmer_____

s/ William B. Hoffman_____

s/ John W. Wise_____

JUDGES