OPINION
Plaintiffs-appellants, the Bryco Company ("Bryco") and Ann Gatch, Trustee, appeal the decision of the Clermont County Court of Common Pleas which affirmed the administrative decision of Milford City Council denying their application for a zone change with a Planned Development overlay. Defendants-appellees are the city of Milford ("Milford") and the City Council of the city of Milford ("Council"). Since we find that a preponderance of reliable, probative and substantial evidence supports the decision of the common pleas court, we affirm.
Appellants seek to develop a one hundred seventy-seven acre tract of land located within Milford. Appellants' land comprises a contiguous tract located between Garfield Avenue and South Milford Road, adjacent to the East Fork of the Little Miami River. The proposed development would consist of thirty-six single family detached homes, one hundred ninety-six townhouses, two hundred courtyard units and a nine-hole golf course.
In order to proceed with their proposed development, appellants sought approval for a zoning change from the Milford Planning Commission. Bryco owns 128.84 acres of the land which are currently zoned Milford R-1 Residential and subject to a previously approved Planned Development ("PD"). The remaining 48.16 acres owned by Gatch are zoned Miami Township H-Resort.[1] Since the Gatch property was subject to H-Resort designation, construction of dwellings intended for year round residency was prohibited. In addition, the R-1 designation of the Bryco land permitted the construction of only one single family detached dwelling per lot. Thus, appellants requested that Milford rezone the Gatch property to R-1 and apply a PD overlay to the entire one hundred seventy-seven acre tract. Designation of the land as a PD would provide appellants flexibility in developing the land. Instead of being limited to constructing single family detached dwellings, appellants could integrate cluster homes, townhouses, garden apartments and even some limited commercial development into theirplan. After three public hearings, the Milford Planning Commission voted to recommend conditional approval of a zone change for the Gatch property from H-Resort District to R-1 Residential District with an overlay designation of PD to the entire tract.
After receipt of the Milford Planning Commission's recommendation for approval, Council conducted a public hearing on the proposed zoning changes. The hearing extended over four Council meetings on May 7, May 21, June 4 and June 18, 1997. During these meetings, Council and the Milford City Administration articulated three major concerns with appellants' proposed development and request for the zoning change: traffic congestion, the imbalance between owner-occupied and rented dwellings, and the developer's ability to complete the project as planned.
Council's first concern with appellants' proposed development was its potential impact on traffic congestion. At the request of the Milford Planning Commission, Bryco hired an outside firm to prepare a heavy traffic impact study. According to the study, the four hundred thirty-two dwelling units of the development would generate as much as two thousand five hundred additional trips a day on South Milford Road to and from the development. Apparently, this impact would exacerbate traffic congestion already experienced on South Milford Road. To alleviate this impact, the engineering firm recommended that a road be built through the development that would connect South Milford Road and Garfield Avenue. Another engineer hired by Milford to assess the traffic issues further recommended that Milford obtain assurances from Bryco that the road would be built even if Bryco was unable to complete the development. This recommendation was based on the assumption that traffic would increase proportionately with the construction of the dwellings. Since construction of the connector road was critical in addressing the issue of traffic, the Milford Planning Commission included the following condition when it recommended approval of the zone change:
 Number one, the developer post a bond or provide other means acceptable to the City to assure that the connection to Garfield Avenue can be constructed by others in the event the development ceases prior to the connection to Garfield Avenue. Based on traffic projections, this bond or assurance must be in place prior to the commencement of the third phase of development.
Council was also concerned that the development would consist of a large majority of renter-occupied dwellings. Of the four hundred thirty-two proposed dwellings, three hundred ninety-six were to be courtyard units and townhouses. Council believed that unlike single-family detached homes, these types of dwellings were readily conducive to renter occupation. The cause for concern was the disproportionate ratio between renter-occupied and owner-occupied dwellings in Milford. When a consulting firm developed a comprehensive plan for Milford in 1994, it determined that forty-three percent of the housing units in Milford are owner-occupied while renters inhabit fifty-seven percent. By contrast, housing units in Clermont County are seventy-two percent owner-occupied and twenty-eight percent renter-occupied. In addition, a survey of Milford residents conducted by the consulting firm demonstrated that the general consensus of the city residents was that there should be more single family homes and fewer apartments. Based on this study, Milford incorporated into its comprehensive plan the goal of developing more single family homes.
Finally, Council wanted to be sure that the entire PD would be completed as planned. In essence, Council wanted assurances that the entire one hundred seventy-seven acre tract would be completed with all of the features and amenities proposed in the PD, especially since a PD would permit construction of dwellings not otherwise permitted under an R-1 Residential District.
Appellants and Council engaged in robust negotiations in an effort to find solutions to Council's concerns. At the final public hearing held on June 18, 1997, Council proposed three "conditions" for approval of the zone change application. Each of the conditions addressed one of Council's concerns. The first condition was that the developer would "post a bond or provide other means acceptable to the City to assure that the connection to Garfield Avenue can be constructed by others in case development [ceases] prior to connection with Garfield." The second condition was that the developer record restrictive covenants to run with the land that prohibit the rental of any unit in the development. The final proposed condition stated: "In the event of failure to comply with the approved plan or any condition of approval, including failure to comply with the staged development schedule, Planning Commission may, after notice, rescind and revoke such approval."
The conditions proposed by Council were not acceptable to appellants. During the course of the hearing, Council and appellants' attorney engaged in heated discussions in an effort to find mutually acceptable solutions. The parties were unable to reach an agreement. At the conclusion of the June 18 hearing, Council voted 7-0 to overrule the recommendation of the Planning Commission and to deny appellants' application for the zone change and PD overlay.
Following the denial of their application, appellants appealed the decision of Council to the Clermont County Court of Common Pleas pursuant to R.C. Chapter 2506. Following their notice of appeal, appellants filed a motion for partial summary judgment under Civ.R. 56(A). In their motion, appellants argued that partial summary judgment in their favor was proper because Milford "may not, as a matter of law, impose conditions of approval for which they lack authority and which transcend their legal power." The court denied appellants' motion finding that summary judgment is inappropriate to the determination of an administrative appeal under R.C. Chapter 2506.
Following the submission of briefs by the parties and oral arguments, the common pleas court affirmed the decision of Council denying appellants' application for a zone change with PD overlay. The court held that the record as a whole supported the decision of Council by a preponderance of reliable, probative and substantial evidence. From the decision of the common pleas court, appellant appeals raising two assignments of error. For purposes of clarity, we will address the assignments of error in reverse order.
Second Assignment of Error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS BY ENTERING A FINAL JUDGMENT FOR APPELLEE DENYING PLAINTIFFS-APPELLANTS' APPLICATION FOR APPROVAL TO DEVELOP THE SUBJECT REAL ESTATE UNDER "PD" PLANNED DEVELOPMENT REGULATIONS OF THE PLANNING AND ZONING CODE OF DEFENDANT-APPELLEE CITY OF MILFORD, OHIO, FINDING THAT LEGITIMATE CONCERNS OF APPELLEE CITY COUNCIL, IN EFFECT, ALLOWED THE CITY COUNCIL TO IMPOSE ILLEGAL AND UNAUTHORIZED CONDITIONS UPON DEVELOPMENT.
R.C. Chapter 2506 provides for the appeal of a final decision of an administrative body to the common pleas court. In reviewing the administrative decision, the common pleas court must determine whether "the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record." R.C. 2506.04. Thus, a common pleas court "should not substitute its judgment for that of an administrative board * * * unless there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34. In addition, the decision of the administrative board is presumed to be valid and the burden of showing its invalidity rests on the contesting party. Consolidated Mgt., Inc. v. Cleveland (1983),6 Ohio St.3d 238, 240.
A judgment of a court of common pleas pursuant to R.C. Chapter 2506 may be appealed to the court of appeals on questions of law. R.C. 2506.04. The scope of review of the court of appeals is limited to determining whether the standard of review prescribed by R.C. 2506.04 was correctly applied by the court of common pleas. Dudukovich v. Lorain Metro. Housing Auth. (1979),58 Ohio St.2d 202, 207. Thus, the court of appeals must affirm the common pleas court unless the court finds "as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence."Kisil at 34.
Appellants challenge the determination of the common pleas court that a preponderance of reliable, probative and substantial evidence supported Council's decision to deny appellants' application for a PD. Specifically, appellants assert that the court's decision allows the City to "impose" illegal conditions upon the development of their land.
Municipalities have the authority to create zoning plans "in the interest of the promotion of the public health, safety, convenience, comfort, prosperity, or general welfare." R.C.713.07. Moreover, the Ohio Constitution provides that "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Section 3, Article XVIII, Constitution. Thus, a municipality is justified by its police power to enact zoning for the public welfare and safety, and these powers need only bear a rational relation to the health, safety, morals or general welfare. Goldberg Cos., Inc. v. Richmond Hts.City Council (1998), 81 Ohio St.3d 207, 213-14, citing Euclid v.Ambler Realty Co. (1926), 272 U.S. 365, 47 S.Ct. 114. Concomitant with the ability to zone land, municipalities must be able to exercise the same police power to deny an application to change a zoning classification in the interest of public health, safety, convenience, comfort, prosperity, or general welfare. See Carneyv. Warren County Board of Commissioners (Aug. 26, 1991), Warren App. No. 90-07-046, unreported at 8-9.
In this case, Council articulated three major concerns regarding appellants' application for a zone change with PD overlay: traffic congestion, the imbalance between owner-occupied and rented dwellings, and the developer's ability to complete the project as planned. These three concerns formed the basis for their denial of appellants' application. In its review of the administrative record, the common pleas court determined that traffic impact and renter-owner ratio could justify the denial of appellants' application. We agree.
Traffic considerations may be sufficient to justify a particular zoning restriction, especially if part of a comprehensive zoning scheme. Columbia Oldsmobile v. City ofMontgomery (1990), 56 Ohio St.3d 60, 67-68. A city may lawfully regulate safety hazards related to roads including "protection of pedestrians and drivers, elimination of traffic congestion and reduction of noise and air pollution." Id. at 67. In this case, reports prepared by consultants revealed that appellants' development would generate as many as two thousand five hundred additional trips a day on South Milford Road. This large volume of anticipated traffic would aggravate traffic congestion. The record reveals that the scope of appellants' development would necessitate the construction of a connector road between South Milford Road and Garfield Avenue. It is apparent Council's concern with the traffic impact of the development was grounded in the interest of promoting safety, convenience and the general welfare of the citizens of Milford.
A city may also "properly exercise its zoning authority in an attempt to preserve and protect the character of designated areas in order to promote the overall quality of life within the city's boundaries." Gerijo, Inc. v. City of Fairfield (1994), 70 Ohio St.3d 223,228. The record in this case reflects that there was a disproportionate ratio between renter-occupied and owner-occupied dwellings in Milford. Due to this fact, Milford incorporated into its comprehensive plan the goal of developing more single family homes. Council believed that three hundred ninety-two of the four hundred thirty-two dwelling units proposed by appellants' plan were readily conducive to renter occupation. Council's concern with the nature of appellants' development is supported by a legitimate interest in controlling population density and promoting the construction of single family homes through zoning regulations.
Appellants assert that the common pleas court decision amounts to allowing Milford to "impose illegal and unauthorized conditions upon development." Yet, the conditions proposed by Council were not part of the decision to deny appellants' application. The three conditions were proffered as a means of addressing Council's concerns with appellants' proposal. The record reflects extensive negotiations between Council and appellants. In the end, the parties were unable to find solutions that would adequately address Council's concerns. Council voted only to deny appellants' application for the zone change and PD overlay as recommended by the Milford Planning Commission. The common pleas court properly limited its review under R.C. 2506.04
to whether Council's decision was supported by the preponderance of substantial reliable and probative evidence on the whole record.
We find that Milford's decision to deny appellants' application for the zone change with PD overlay was a valid exercise of Milford's police power. Moreover, we find the decision of the common pleas court is supported by a preponderance of reliable, probative and substantial evidence. Accordingly, appellants' second assignment of error is overruled.
First Assignment of Error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS BY DENYING APPELLANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT, HOLDING THAT PARTIAL SUMMARY JUDGMENT IS NOT APPROPRIATE FOR THE DETERMINATION OF LEGAL ISSUES IN AN ADMINISTRATIVE APPEAL PURSUANT TO R.C. CHAPTER 2506.
In their first assignment of error, appellants contend that the common pleas court erred by holding that summary judgment was inappropriate in an administrative appeal taken pursuant to R.C. Chapter 2506. In their motion for partial summary judgment, appellants sought a ruling that Council could not "impose" conditions upon the development of their land. Rather than considering the motion for summary judgment, the common pleas court ruled on the merits of the case based upon the administrative record and the arguments of the parties. Appellants fail to demonstrate that the result would have been different if the common pleas court had applied Civ.R. 56. Since we find that the common pleas court applied the correct standard of review and reached the correct decision, we need not determine whether summary judgment is appropriate in an administrative appeal under R.C. Chapter 2506. Accordingly, appellants' first assignment of error is overruled as moot.
Judgment affirmed.
YOUNG and WALSH, JJ., concur.
[1] Although annexed by the city of Milford, this property was still subject to Miami Township zoning.