[Cite as *Korey v. Hunting Valley Planning & Zoning Comm.*, 2022-Ohio-4390.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SYLVIA KOREY, TRUSTEE, :

    Plaintiff-Appellant, :

    v. : No. 111382

PLANNING AND ZONING :
COMMISSION OF THE VILLAGE
OF HUNTING VALLEY, :

    Defendant-Appellee. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 8, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-897414

---

### *Appearances:*

Mansour Gavin LPA, Anthony J. Coyne, Bruce G. Rinker, Tracey S. McGurk, and Kathryn E. Weber, *for appellant.*

Stephen L. Byron, Hunting Valley Law Director, *for appellee.*

Hauser Law LLC, and Laura A. Hauser, urging reversal for amici curiae the Cleveland Restoration Society, Heritage Ohio, and the National Trust for Historic Preservation.

SEAN C. GALLAGHER, A.J.:

{¶ 1} Plaintiff-appellant Sylvia Korey, Trustee ("Korey"), appeals the judgment of the Cuyahoga County Court of Common Pleas that found "the codified ordinances of the Village of Hunting Valley zoning code as applied to [Korey's] property are constitutional." Upon review, we affirm the judgment of the common pleas court.

## I. Procedural and Factual History

{¶ 2} Korey is the owner of a residence, known as "Roundwood Manor," located in the Daisy Hill subdivision in the Village of Hunting Valley, Ohio ("the Village" or "Hunting Valley"). Roundwood Manor is a 55,000 square-foot residence situated on 7.69 acres of land in the Village's U-1 single-family house district.[1] Other properties in the Daisy Hill neighborhood, and elsewhere in the Village, have been developed in conformance with the Village's zoning code.

{¶ 3} Korey purchased her property in 1988 and has used the residence as a single-family dwelling for over 30 years. Roundwood Manor was built in the 1920s and originally served as a country home and business retreat to Oris Paxton Van Sweringen and Mantis James Van Sweringen. Korey completed restoration work on the property, and she and others have worked toward and advocated for the historic preservation of Roundwood Manor. Korey began trying to sell the property

---

[1] Hunting Valley Codified Ordinances 1155.01(a) provides that "the Village shall consist of three use districts termed Class U1 (Single-Family House), Class U3 (Institutional), and Class CDD (Conservation Development District plus a category of specially permitted uses termed Class U2 (Residential-Special Permit), a single height district termed Class H1, and a single area district termed Class A1."

in 2002, and eventually she began proposing to convert Roundwood Manor into six luxury residences. However, under the current zoning classification, the residence may only be used as a single-family dwelling and in the area district, the zoning code prohibits more than one residential unit for each five acres of lot area. *See* Hunting Valley Codified Ordinances 1155.03 and 1155.09(a).

{¶ 4} In July 2017, Korey filed an application for a conditional-use permit, which sought to convert Roundwood Manor from its current configuration as a single-family residence into a multi-family dwelling consisting of six condominium units. In the application, Korey expressed an objective for the historic preservation of the "unique manor house" and indicated that Roundwood Manor "is, in its history, architecture, and its strategic land use emblematic of the region's golden age of development." Korey attached various documents in support of her application.

{¶ 5} The Planning and Zoning Commission of the Village of Hunting Valley ("the Commission") heard testimony and took evidence regarding the application. On April 10, 2018, the Commission issued a final order denying Korey's application for the conditional-use permit and her amended request for a special-use permit. The Commission recognized the testimony supporting the historic significance of Roundwood Manor and reflecting the shared interest in its historic preservation, but the Commission found "the presumed historic significance of [Roundwood Manor] does not preempt the zoning regulations of the Village." The Commission noted that there are other large prominent residences in the Village. Among other findings, the Commission found that "[t]he five acres per residential

unit is the sine qua non of Hunting Valley's Zoning Code" and that "every development in the last 40 years has complied with the density requirement."[2] The Commission concluded that varying from this requirement would not be "in general keeping and compatible with the uses authorized for a Class U1 or Class U2 classification[,]" that "the residential density is not consistent with every other residential development that has been built in the Village since the five-acres per residential unit requirement was enacted as law[,]" and that "[t]he proposed use is also likely to substantially injure the neighboring property and the entire Village."

{¶ 6} In the administrative appeal to the Cuyahoga County Court of Common Pleas, the court rejected Korey's arguments that the Commission's decision was unsupported by a preponderance of probative evidence, and the court upheld the denial of Korey's request for a special-use permit. *Korey v. Planning and Zoning Comm. of Hunting Valley*, Cuyahoga C.P. No. CV-18-897414 (Mar. 13, 2020). The common pleas court also rejected Korey's claim that the zoning requirement of five acres per residential unit is unconstitutional as applied to Korey's property. *Id.*

{¶ 7} In the first appeal to this court, the panel affirmed the common pleas court's decision to uphold the Commission's denial of Korey's request for a special-

---

[2] The Commission also took notice of its own past actions in that "[o]nly one property has been developed in the Village pursuant to Chapter 1157 [Conditional Use Regulations] and Chapter 1159 [Historic Settlement] of the Zoning Code: the [Clanonderry] property in Daisy Hill" and that development was approved "because it met all the Zoning Code's requirements[,]" including the density requirement of one residential unit per five acres of land.

use permit. *Korey v. Planning & Zoning Comm. of Hunting Valley*, 8th Dist. Cuyahoga No. 109669, 2021-Ohio-1881, ¶ 40, 44 ("*Korey* I"). However, the panel found that Korey was entitled to the opportunity to admit additional evidence supporting her claim that the "5:1 acreage-to-residence zoning regulation" is unconstitutional as applied to her property. *Id.* at ¶ 45-46, 55. The case was remanded with instruction for the common pleas court to conduct a de novo hearing to allow Korey to present additional evidence to support her argument that relevant portions of the Village's zoning code are unconstitutional as applied to Korey's property. *Id.* at ¶ 57. Additional background until this point of the case can be found in *Korey* I. *See id.* at ¶ 3-44.

{¶ 8} Upon remand from *Korey* I, the common pleas court conducted a three-day de novo hearing that allowed the parties to present additional testimony and evidence to address Korey's constitutional challenge. Specifically, Korey claimed the zoning regulation requiring five acres of lot area per residential unit is unconstitutional as applied to the proposed use of her property. Several witnesses testified at the hearing. We have reviewed the transcript of the proceedings and include only a brief overview of some of the testimony herein.

{¶ 9} On behalf of Korey, testimony was provided by Michael Fleenor, a historic preservation expert who authored an application for historic preservation of Roundwood Manor. He testified to the historic significance of the property, but he did not say the proposed use was the only way that Roundwood Manor can be preserved. Kristin Hopkins, an expert in land-use planning, testified that the five-

acre minimum lot size stemmed from deed restrictions that started with the Daisy Hill subdivision and that an open-space plan was adopted as the master plan for the entire Village. She testified that "currently the zoning code does not permit more than one dwelling unit on a lot" and that she researched the number of lots in the Village with more than one dwelling unit. She found 28 parcels in the county records that have two or more dwelling units on one lot. For example, she indicated the Clanonderry property, which was originally the stables to Roundwood Manor, has three residential units; and the Ostendorf property, which are the former garages to Roundwood Manor, has five units. Hopkins acknowledged that the Village's zoning code was passed in 1938 and has been amended over the years. Hopkins's report dated October 22, 2021, indicates that the former garages on the Ostendorf property were converted to apartments by 1964, and the former stables on the Clanonderry property were converted into residences in the late 1990s. Hopkins acknowledged that the current zoning code, which was amended in 1999, provides that no accessory building on a lot less than ten acres in area shall be designated or used for residential purposes. *See* Hunting Valley Codified Ordinances 1155.04(a)(5). Hopkins also conceded that the zoning code does not apply so long as the preexisting nonconforming use does not change.

{¶ 10} Among other matters, Korey testified regarding her ownership of the property, to her interest in preserving Roundwood Manor, to the characteristics of her property, to her efforts to sell the property, and to her proposed development of

Roundwood Manor.[3] Former Hunting Valley Councilman William O'Neill, Jr., who supported Korey's proposal and her efforts to preserve Roundwood Manor, recognized that one of the reasons for the five-acre minimum zoning requirement is "to limit the number of residences that can be built on a given amount of land and its design, of course, was to keep open space and the pasturable quality and scenic beauty of Hunting Valley, to try to retain that." He believed an exception should be made for Korey's property and submitted a document entitled "The Case to Save Roundwood Manor" to the Village council. Hunting Valley Councilman Gerald Medinger testified to his understanding that Korey would not be changing the ratio of the building footprint to the amount of land. Nevertheless, he was opposed to Korey's proposal and indicated the five-acre minimum zoning requirement is consistent with maintaining the character of the Village and the open space that the legislative and executive branches of the Village have embraced for its residents.

{¶ 11} On behalf of the Village, the deposition testimony of Stephen Morris was played for the court. Morris, who formerly served on the Village's Planning and Zoning Commission, testified that the requirement of a five-acre minimum per residential unit is an "integral [and] important part" of the Village's zoning. He testified a majority of the property owners in the Village have a deed restriction limiting the use of their property to one residence per five acres of land. He indicated the five-acre minimum restriction is part of the reason the Village is a desirable place

---

[3] The testimony reflects that Korey does not have a deed restriction on her property.

to live.  He believed that the general welfare of the community was best served by the restriction because it maintained open space and preserved environmental values.  He did not believe Korey's proposal to convert her property into six condominium units was consistent with the overall character of the community.

{¶ 12} Sabrina Lahorra, president of the board of trustees of the Daisy Hill Homeowners Association, testified that she would not have purchased a home in the Daisy Hill subdivision if there was the potential of a very large home being converted into six condominium units and that the board had unanimously voted against Korey's request to waive the deed restrictions.  Lahorra indicated that she was aware when she purchased her property of two preexisting properties in Daisy Hill with accessory structures with more than one residence, including the Clanonderry property and the Ostendorf property; however, she knew going forward all properties in Daisy Hill would be single-family residences.  She indicated that she would not have purchased her property if there was a potential for the larger homes to be converted into multi-family structures.

{¶ 13} Donald Cunningham, the Hunting Valley building commissioner, testified to each of the properties discussed in Hopkins's report, which he indicated have a preexisting nonconforming use, a permitted use at the time constructed, or conform to the current zoning code's five-acre minimum requirement.  For example, he testified that the Ostendorf residence was constructed in 1920, has the main residence and four apartments, and is a preexisting nonconforming use; the Godsick residence was built in 1941 and has a separate guest house that was a permitted use

at the time constructed; the Wolstein residence was built in 2006, has a detached garage with two apartments, and is on 73.7 acres, which conforms to the current zoning code; and the Clanonderry property was built in 1918 and met the requirements for a historic-settlement district.

{¶ 14} George Smerigan, the Village's municipal planning expert, indicated that the one dwelling unit per five-acre standard is the very heart of the Village's planning and zoning code and that environmental conditions make density control and intensity of land use critical zoning issues. He noted that the topography of the Village has areas of extreme slopes and very steep ravines and that there are no sanitary sewers, difficult soils in terms of handling on-site septic systems, and some substandard streets. He testified to his belief that the provisions of the Village's zoning code are based on standards of balancing the scope and intensity of land use with the capability of the associated infrastructure. He also opined that multi-family housing was incompatible with the established single-family character of the district and that it would have adverse effects on the adjacent properties. He further opined that allowing large single-family dwellings to be converted to multi-family structures would change the character of the neighborhood and the community that residents bought into and would have a detrimental effect on values within the community. Smerigan testified that the Village has single-family detached properties and single-family attached properties, which have separate entry and no common halls or shared parking; but that the Village has no "multi-family" housing, which has shared entrances, shared hallways, and shared parking arrangements.

{¶ 15} Smerigan also testified that 16 of the 28 properties in Hopkins's report have more than five acres per residential unit. As for the other 12 properties, Smerigan indicated that several were constructed prior to the enactment of the Village's zoning code in 1938 and are preexisting, lawful nonconforming uses. Those that were built between 1938 and 1999 were permissible and legal at the time they were constructed. Smerigan also pointed out that up until 1999, the Village's zoning code permitted accessory guest quarters on a property, but it was amended to eliminate provision for those extra units and extra density.

{¶ 16} The common pleas court issued a decision on February 25, 2022. *Korey v. Planning and Zoning Comm. of Hunting Valley*, Cuyahoga C.P. No. CV-18-897414 (Feb. 25, 2022). The court's opinion reflects that it heard the testimony provided, considered the entire record, and gave due consideration to Korey's constitutional challenge. *Id.* The court noted the witnesses who testified and briefly commented on the testimony of the municipal planning experts. *Id.* The court commented that Smerigan offered testimony that the Village's zoning requirement for a minimum of five acres per residential unit safeguards environmental values, such as soils, aquifer, storm water, riparian areas, sanitation, environmentally sensitive lands and habitat, slopes sensitive to erosion, and overall preservation of open spaces. *Id.* The court also commented that Hopkins offered testimony that Korey's proposed use, which would not alter the footprint of the home, would not adversely affect those environmental values, nor would it affect traffic, light, noise, character, and open space of the Village. *Id.* The common pleas court recognized

from its previous determination of the request for a special-use permit that "the density limits in the Village of five-acres per residential unit was the 'core value' of the Village's zoning code" and that "the facts previously established that an increase of 'noise, traffic and light in the Village' would substantially harm the neighboring properties." *Id.* The court considered the additional evidence presented on Korey's as-applied challenge and set forth the proper standard of review. *Id.*

{¶ 17} In its decision, the common pleas court rejected Korey's argument that because multiple accessory buildings and rental properties currently exist in the Village, her proposed use of Roundwood Manor would be reflective of the character of the Village. *Id.* The court found that "[while] accessory residential dwellings were permitted prior to the enactment of Ordinance No. 1999-141, and some properties in the Village (including [Korey's] residence) have more than one dwelling unit incorporated into an existing building (or an accessory building)," that these "are considered lawful non-conforming prior uses" and "accessory residential dwellings are no longer permitted" under the Village's zoning code. *Id.* As the court observed,

> In the U-1 District, the only new residential dwellings that are permitted on a lot that is less than 10 acres in area is one single-family dwelling per five acres of land. Nearly all of the Village is subject to private deed restrictions, which prohibit the development of the land in the Village at a density greater than one residential dwelling per five acres. This is evidence of the investment-backed expectations of the property owners in the Village that the character of the neighborhood will be preserved.

*Id.*

{¶ 18} The common pleas court concluded that the challenged zoning provision is constitutional as applied to Korey's property, stating as follows:

> [The] Court finds [the] Village's ordinances, as applied to [Korey's] property, advance the health, safety and welfare of the Daisy Hill neighborhood and the whole of [the] Village. [Korey] has failed to establish beyond fair debate that the five-acre minimum zoning ordinance was [arbitrary] and unreasonable or substantially unrelated to the public health, safety, or general welfare of the Village of Hunting Valley. [Korey's] interest in increasing the marketability of her property and/or its preservation [does] not render the Hunting Valley codified ordinance as applied to her property unconstitutional. While the Court is sympathetic to Mrs. Korey's cause, this Court is bound to the law before it.
>
> Accordingly, upon consideration of the entire record including the *de novo* hearing, the Court finds that the codified ordinances of the Village of Hunting Valley['s] zoning code as applied to [Korey's] property are constitutional.

*Id.*

{¶ 19} Korey timely filed this appeal. This court granted a motion for leave to file an amicus curiae brief in support of appellant instanter filed by the Cleveland Restoration Society, Heritage Ohio, and the National Trust for Historic Preservation. We have reviewed all the briefing and the record before us.

## II. Assignments of Error

{¶ 20} Under her first assignment of error, Korey challenges the common pleas court's evaluation of her as-applied constitutional challenge. She maintains that her proposed use of her land "does not adversely affect the public interests advanced by the 5-acre house-to-land regulation."[4] Under her second assignment

---

[4] Korey does not assert a facial challenge to the zoning or allege a taking of the property.

of error, Korey argues the common pleas court erred by basing its decision on the opinion testimony of the Village's municipal planning expert. Korey claims that the court failed to undertake its obligation as "gatekeeper" of expert-opinion evidence and that Smerigan's testimony was "incompetent, speculative, conclusory and/or was not the product of 'reliable, scientific, technical, or other specialized information.'" Under her third assignment of error, Korey claims the common pleas court's decision is against the manifest weight of the evidence. Among other assertions, Korey claims that the common pleas court turned a blind eye to the evidence, that the court abdicated its duty to adjudicate upon the evidence, that the contentions of the Village's witnesses lack merit, and that Korey proved her as-applied constitutional claim.

### III. Law and Analysis

{¶ 21} In an administrative appeal in which a landowner challenges the constitutionality of a zoning ordinance as applied, the issue of constitutionality presented for determination is "whether the ordinance, in proscribing a landowner's proposed use of his land, has any reasonable relationship to the legitimate exercise of police power by the municipality." *Mobil Oil Corp. v. Rocky River*, 38 Ohio St.2d 23, 309 N.E.2d 900 (1974), syllabus. A zoning ordinance is presumed to be constitutional, and the party challenging the ordinance's constitutionality has the burden to demonstrate "beyond fair debate" that the ordinance at issue is arbitrary and unreasonable, and without substantial relation to the public health, safety, morals, or general welfare of the community, as applied to the particular property.

*Jaylin Invests., Inc. v. Moreland Hills*, 107 Ohio St.3d 339, 2006-Ohio-4, 839 N.E.2d 903, ¶ 13, citing *Goldberg Cos. v. Council of Richmond Hts.*, 81 Ohio St.3d 207, 214, 690 N.E.2d 510 (1998). "[T]he object of scrutiny is the legislative action" and "[t]he zoning ordinance is the focal point of the analysis, not the property owner's proposed use * * *." *Id.* at ¶ 18. Consequently, "[t]he analysis focuses on the legislative judgment underlying the enactment, as it is applied to the particular property, not the municipality's failure to approve what the owner suggests may be a better use of the property." *Id.* As held in *Jaylin*, "[i]n an 'as applied' challenge, the proposed use may be a relevant factor to be considered; however, the owner must also present evidence to overcome the presumption that the zoning is a valid exercise of the municipality's police powers, as it is applied to the property at issue." *Id.* at ¶ 2. "'The legislative, not the judicial, authority is charged with the duty of determining the wisdom of zoning regulations, and the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable.'" *Cent. Motors Corp. v. Pepper Pike*, 73 Ohio St.3d 581, 584, 653 N.E.2d 639 (1995), quoting *Willott v. Beachwood*, 175 Ohio St. 557, 560, 197 N.E.2d 201 (1964).

{¶ 22} In this matter, the lower court correctly stated the law, engaged in a proper analysis when evaluating the facts, and determined that Korey did not demonstrate beyond fair debate that the five-acre minimum zoning ordinance is arbitrary and unreasonable, and without substantial relation to the public health, safety, morals, or general welfare of the community, as applied to her property.

*Korey*, Cuyahoga C.P. No. CV-18-897414 (Feb. 25, 2022). Upon our review, we agree that Korey failed to meet her burden of proof and did not establish the zoning ordinance is unconstitutional as applied to her property.

{¶ 23} We begin with the presumption that the Village's zoning ordinances are constitutional. *Jaylin* at ¶ 18. Here, the Village's zoning code provides that the general purpose of the zoning regulations is "to promote and protect the public health, safety, convenience, comfort, prosperity and general welfare throughout the Village * * *." Hunting Valley Codified Ordinances 1151.02. Among other intended objectives, the provisions are to be applied "[t]o conserve and protect open space, valuable residential property and the reasonable use of private property by individuals." Hunting Valley Codified Ordinances 1151.02(a). To that end, the zoning code provides for a single-family house district but regulates "the number of square feet of lot area per family housed" in a single area district. Hunting Valley Codified Ordinances 1155.01. The zoning code requires that "[i]n a Class A1 District, no dwelling shall be erected or altered to accommodate or make provision for more than one family for each five (5) acres of lot area." Hunting Valley Codified Ordinances 1155.09(a). The zoning code further provides that "[n]o building or premises shall be erected or used except in conformity with the regulations herein prescribed for the use, height and area districts in which such building or premises are located." Hunting Valley Codified Ordinances 1151.01.

{¶ 24} The object of scrutiny is the legislative action, and the analysis focuses on the legislative judgment underlying the Village's zoning ordinances, as it is

applied to Korey's property. *Jaylin*, 107 Ohio St.3d 339, 2006-Ohio-4, 839 N.E.2d 903, at ¶ 18. As applied to Korey's property, which is zoned for single-family use and has less than eight acres, the five-acre minimum zoning ordinance prohibits Korey from having more than one residential unit per five acres of land. The issue to be considered is whether the Village's zoning ordinance, as applied to prohibit Korey's proposed use of her property as a multi-family structure with six condominium units, has any reasonable relationship to the legitimate exercise of police power by the Village. *See id.* at ¶ 20, citing *Mobil Oil,* 38 Ohio St.2d 23, 309 N.E.2d 900, at syllabus.

{¶ 25} Testimony was provided by Morris that the five-acre minimum per residential unit requirement is an integral part of the Village's zoning, that a majority of property owners in the Village have a deed restriction, and that the five-acre restriction serves the general welfare of the community by conserving open space and protecting environmental values. The Village's municipal planning expert, Smerigan, testified that the one dwelling unit per five-acre standard is the very heart of the Village's zoning code. He referred to the Village's "extreme topographic conditions" and indicated that the zoning requirement is intended to protect environmental values, to control the intensity of land use, and to maintain reasonable density of development. Smerigan also testified that there is no multi-family housing in the Village and that multi-family housing is incompatible with the established single-family character of the district. Consistent with these purposes, Village resident Lahorra testified that she bought into the single-family character of

the Daisy Hill neighborhood and that the Daisy Hill board of trustees unanimously voted against waiving deed restrictions. The record demonstrates that the Village's five-acre minimum zoning ordinance, in prohibiting Korey's proposed use of her property, advances the Village's legitimate interests in conserving open space, protecting environment values, maintaining reasonable density of development, and preserving the single-family character of the Village, among other purposes.

{¶ 26} "The challenge must focus on the constitutionality of the ordinance as applied to prohibit the proposed use, not the reasonableness of the proposed use." *Id.* at ¶ 20. Korey makes the inverse argument. She states that her argument "presupposes that the zoning ordinance advances legitimate public interests of health, safety, morals and welfare." She argues that "the harm sought to be avoided" bears no relation to her proposed interior renovation of Roundwood Manor, that the unique facts involving her property must be considered, and that her proposed use, which does not change the footprint of the home, does not adversely affect the public interests advanced by the zoning regulation. But the issue is not whether the proposed use meets the government's legitimate goals underlying the zoning enactment. *See id.* at ¶ 18. As the Supreme Court indicated in *Jaylin*, whether a proposed use advances the stated governmental interest does not address the issue of "'whether [the] zoning ordinance [at issue] advances a legitimate government interest.'" *See id.* at ¶ 23, quoting *Cent. Motors*, 73 Ohio St.3d at 586, 653 N.E.2d 639.

{¶ 27} Although the proposed use may be a relevant factor to be considered in analyzing the zoning ordinance's application to the particular property at issue, the analysis does not focus on the municipality's failure to approve what the owner suggests may be a better use of the property. *See Jaylin,* 107 Ohio St.3d 339, 2006-Ohio-4, 839 N.E.2d 903, at ¶ 18. Korey has used her property as a single-family home for over three decades in conformance with the Village's zoning code. The five-acre minimum zoning ordinance precludes her proposed conversion of her single-family residence into six condominium units. Insofar as Korey has worked toward the restoration of Roundwood Manor and she, the amici curiae, and others have advocated in favor of historic preservation, such evidence does not in and of itself render the zoning ordinance unconstitutional, as applied to prohibit the proposed use. As the lower court observed, "[Korey's] interest in increasing the marketability of her property and/or its preservation [does] not render the Hunting Valley codified zoning ordinance as applied to her property unconstitutional." *Korey*, Cuyahoga C.P. No. CV-18-897414 (Feb. 25, 2022); *see also Jaylin.*

{¶ 28} "'The burden of proof remains with the party challenging an ordinance's constitutionality * * *.'" *Jaylin* at ¶ 13, quoting *Goldberg*, 81 Ohio St.3d at 214, 690 N.E.2d 510. Korey proceeds to argue that there are other properties in the Village that do not meet the five-acre ratio. Although Korey's land-use planning expert, Hopkins, pointed to other properties that have more than one dwelling unit on the property, the record reflects those properties had a preexisting nonconforming use, a permitted use under prior zoning provisions, or conform to

the current zoning code. The amicus brief refers to several of the same properties, some of which have a primary residence and a "guest cottage" on the lot.[5] However, this fails to account for the fact that up until 1999, the Village's zoning code permitted accessory guest quarters on a property. The record reflects that the Village has uniformly enforced its zoning code, that there are no "multi-family" dwellings in the Village, and that accessory residential uses have not been permitted on properties less than ten acres since 1999.

{¶ 29} Korey also argues that historic preservation is an attribute of Hunting Valley and there are three named historic settlements listed in Chapter 1159 of the Village's zoning code, including the Clanonderry property. However, unlike Korey's property, Clanonderry met all the requirements for a historic-settlement district under the Village's zoning code, including the density requirement. The Village does not dispute the value of historic preservation, and the zoning code permits designation of historic districts when requirements are met. However, the Village has never permitted multi-family housing, and the five-acre minimum per residential unit remains a core value of the Village's zoning code. As already discussed, the Village has legitimate interests in the preservation of open space and important environmental values. Also, the testimony provided was reflective of residents' expectations in maintaining reasonable density of development, the

---

[5] We note that the amicus brief points to several properties that do not meet the requirement of five acres per residential unit, including four properties built between 1938 and 1999, each having a main house and an accessory structure, and to five properties built before 1938 that were "presumably 'grandfathered' in 1938."

scenic landscape, and the single-family character of the community. Korey fails to show that the Village's land-use policy has been exercised in an arbitrary or unreasonable manner. As expressed by the Supreme Court of Ohio, "'The power of a municipality to * * * determine land-use policy is a legislative function which will not be interfered with by the courts, unless such power is exercised in such an arbitrary, confiscatory, or unreasonable manner as to be in violation of constitutional guaranties.'" *Id*. at ¶ 21, quoting *Willott*, 175 Ohio St. 557, 197 N.E.2d 201, at paragraph three of the syllabus.

{¶ 30} Our review of the record reflects Korey failed to demonstrate "beyond fair debate" that the five-acre minimum zoning ordinance is arbitrary and unreasonable, and without substantial relation to the public health, safety, or general welfare of the community, as applied to her property. We agree with the common pleas court's determination that the Village's zoning ordinance as applied to Korey's property is constitutional.

{¶ 31} Finally, we address Korey's challenge to the admission of certain testimony of the Village's municipal planning expert. Korey maintains that the lower court, as gatekeeper, should have evaluated the reliability of the opinions offered by Smerigan that were not within his area of expertise. She argues that being a qualified municipal planner does not automatically qualify Smerigan to render opinions on traffic, noise, light, septic systems, aquifers, hillside slopes prone to erosion, wetlands, habitat, and other environmentally sensitive lands.

{¶ 32} The admission of expert testimony is a matter committed to the sound discretion of the trial court. *State v. Biros*, 78 Ohio St.3d 426, 452, 678 N.E.2d 891 (1997), citing *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996). Here the matter was heard by the common pleas judge. The record reflects that the judge properly evaluated the evidence when considering the constitutionality of the zoning ordinance as applied to Korey's property. Smerigan testified to the underlying purposes of the Village's zoning provision allowing only one single-family dwelling unit per five acres, which he stated was intended to control the intensity of land use and maintain reasonable density levels. He shared his opinion as a land-use planner that multi-family housing was incompatible with the established single-family character of the district and of the adverse effects the requirement was intended to protect against, such as increasing traffic volume, increasing light and noise, and putting pressures on the carrying capacity of both the land and associated infrastructure. The court sustained an objection raised as to how specifically the conversion of Korey's property into six condominiums would affect the environment. On cross-examination, Smerigan was questioned extensively regarding the concerned impacts and environmental values as related to Korey's proposed use of her property. From our review of the testimony, we do not find any abuse of discretion occurred. Even assuming solely for the sake of argument that there was error in the admission of certain aspects of Smerigan's testimony, we find that error to be harmless since it did not prejudice the substantial rights of Korey. *See* Civ.R. 61.

{¶ 33} We have fully considered all the arguments presented by Korey, as well as in the amicus brief, and are not persuaded by any other argument not specifically addressed herein. The assignments of error are overruled.

## IV. Conclusion

{¶ 34} We agree with the common pleas court that Korey failed to demonstrate, beyond fair debate, that the zoning ordinance at issue is arbitrary and unreasonable and without substantial unrelation to the public health, safety, morals, or general welfare of the community, as applied to prohibit Korey's proposed use of her property. We affirm the judgment of the common pleas court finding the Village's zoning ordinances as applied to Korey's property are constitutional.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
MARY EILEEN KILBANE, J., CONCUR